No. 7996

CRESCENT CITY LIVE STOCK LANDING AND SLAUGHTER-HOUSE COMPANY VS. CITY OF NEW ORLEANS. MARTIN WOLF, INTERVENOR.

Act No. 118 of the Legislature of 1869, (incorporating the Crescent City Live Stock Landing and Slaughter-House Company), was clearly within the police powers of the State, and was a valid and legal enactment of the General Assembly. 23 An., 545; 16 Wallace, 36.

But such an Act of the Legislature cannot bind the State: the rights therein granted are revocable at the will of the sovereign, and the grantee holds nothing, indeed, but a license subject to abrogation by future constitutional and, even, legislative action. 101 U. S., 814.

Such a Charter does not create a contract between the State and the grantee, protected from impairment by the Constitution of the United States.

Article 258 of the Constitution of 1879 has clearly abrogated all the monopoly features or exclusive privileges created by said Act No. 118 of 1869.

APPEAL from the Fifth District Court for the parish of Orleans. Rogers, J.

*Mott & Kelly* for Plaintiff and Appellant:

First—The grant by the State of Louisiana to the Crescent City Live Stock Landing and Slaughter-House Company, by act No. 118 of 1869, of the exclusive right to carry on the business of live stock landing and slaughtering in the parishes of Orleans, Jefferson and St. Bernard, for a period of twenty-five years, is a valid grant, binding upon the State and the citizens of the State. State ex rel. Belden vs. Fagan, 22 An. 545; Slaughter-House Cases, 16 Wallace, 36.

Second—The Act embodied a contract between the State and the Company the obligation of which is under the safeguard of Art. 1. Sec. 10, of the Constitution of the United States, which forbids a State from passing any law impairing the obligation of contracts. Montpelier Academy vs. George, 14 L. 395; Williams vs. Mills, 11 Ired. 561; Boston and Lowell Rw. Co. vs. Salem and Lowell, Boston and Maine, and Lowell and Lawrence R. R. Cos., 2 Gray, 1; Fletcher vs. Peck, 6 Cranch, 135; People vs. Jackson and Mich. Plank Road Co., 9 Mich. 307; Cooley Constitutional Lim. 574-6.

Third—Articles 258 and 248, of the Constitution of 1879, so far as they may be construed to abrogate the contract between the State and the Company embodied in the Act of 1869, cannot be sustained on the assumption that they were adopted in the exercise of the police power for the promotion of the health of the City of New Orleans and vicinity. So far as those articles may be construed to impair the obligation of the contract embodied in the Act of 1869, they are to be held inoperative and void. 94 U. S. 645; 97 U. S. 25,501; 101 U. S. 816; Cooley Constit. Lim. 574, 576; 9 Mich., 307.

*B. R. Forman* and *F. C. Zacharie* for Defendant and Appellee:

First—Monopolies are abolished and prohibited. Constitution 1879, Arts. 46, 248, 258.

Second—The exclusive privileges granted to Crescent City Slaughter-House Company by Act 118, 1869, were not within the contracting power of the Legislature but an exercise of the Police Power: 22 A. 345; 16 Wallace, 36, and may be abolished at the will of the people of the State. Boyd vs. Ala., 94 U. S. 645; Beer Co. vs. Mass., 97 U. S. 25; Stone vs. Miss. 101 U. S. 814.

*E. K. Washington* for Intervenors and Appellees:

First—That the title of Act No. 119 of 1869, under which plaintiff was incorporated, being "An act to protect the health of the City of New Orleans," etc., necessarily causes its charter to fall within the purview of health regulations, ordinances, or police statutes, and that a

claim of a company to have a "vested right" or "contract" to protect the health of the City of New Orleans is ridiculous.

Second—That the Supreme Court of the State of Louisiana, see 22 An. 545, and the Supreme Court of the United States, see 16 Wallace, p. 36, have expressly decided in reference to the act incorporating the plaintiff, that the granting of it was an exercise of the police power of the State.

Third—That no State can divest itself irrevocably, or entirely part with, to an agent corporation, or company, of its duty and function of caring for the health and well-being of its citizens, and that the nature and subject-matter of such rights are resumable by the State at pleasure, and no corporation can claim a "vested right" therein. See Otto, 11th vol. (U. S.) Reports 101, p. 829.

Fourth—By articles 248, 234, and 258 of the Constitution of 1879, the State has conferred "on the police jury of each parish and the municipal authorities alone, the power of regulating the slaughtering of animals for food," and announced this power "shall not be restricted to the lands or houses of any individual or corporation." By this it does not take away from plaintiff the right to pursue its business, but it resumes and exercises its police power by creating other agencies through which it is to be exercised.

Fifth—It is shown, see Cooley's Constitutional Limitations, pp. 282, et seq., and cases there cited, "that the police power of the State cannot be alienated even by express grant;" "that the State cannot barter away or abridge any of its essential powers, the existence of which is essential in full vigor to the well-being of organized society," and that if a State should afterwards annul any such grant, it is not obnoxious to so much of the. Federal Constitution as imposes a vested right in the obligations of a contract.

Sixth—By recent decisions of the Supreme Court of the United States, see 7th Otto, page 33: (97th U. S. Reports, and also 98th vol.), it is declared it is no longer an open question that the police power of a State is inherent in it and that it cannot irrevocably part with it, and that the resumption of its powers in this regard does not conflict with the Federal Constitution.

Seventh—In the United States Supreme Court Reports, vol. 101, 11th Otto, page 829, we find that the Darmouth College case, 4th Wheaton, page 518, strangely and strongly relied on by plaintiff in the lower court, is quoted as authority in support of these views, and Chief Justice Waite says: "All agree that the Legislature cannot bargain away the police power of the State." It is shown in 22 An. 545, the statute creating this plaintiff is a "public statute." The Dartmouth College case was that of a private corporation. Hence, it has no reference to this case, and "the engineer is hoisted by his own petard."

The opinion of the Court was delivered by

LEVY, J.   Plaintiff, an incorporated company, instituted this suit, in which it prayed for a writ of injunction "restraining the City of New Orleans from entertaining any petitions for, and from ever designating a place or places for the landing, yarding, sheltering or slaughtering any animal or animals intended for human food, in the parishes of Orleans, Jefferson and St. Bernard, other than at the slaughter-houses and premises of petitioner, and above the United States Barracks, on the east or left bank of the Mississippi river, and above the depot of Morgan's Louisiana and Texas Railroad, on the west or right bank of said Mississippi river, and that the injunction be made perpetual, and that said City of New Orleans be condemned to pay to petitioner twelve hundred dollars damages."   The injunction prayed for was granted by the lower court.

Martin Wolf intervened, by petition, alleging that he was largely

engaged in the slaughtering of animals and sale of meats in the upper portion of the City of New Orleans, and is largely interested in the result of this suit; that plaintiff has no exclusive right, under the law, or exclusive privilege of slaughtering animals at its yards, as claimed in its petition, etc.

The City of New Orleans, in her answer, makes a general denial of all the allegations in the petition, so far as the same may have a tendency to give plaintiff any cause of action against her; alleges that the statute creating the plaintiff corporation, approved March 8th, 1869, is a public statute, and the powers therein were delegated under the general police power of the State; that plaintiff gave no *bonus* and paid no consideration whatever either to the State or city for the exclusive rights, privileges and benefits thereby conferred; that there is no contract thereby or thereunder between plaintiff and the State; that the General Assembly of 1869 could not irrevocably, or for a limited time, divest the State of its police power, or prevent subsequent Legislatures from revoking and enlarging the privileges granted; that, by Art. 248 of the Constitution of 1879, it is provided " that, the constituted authorities of all incorporated municipalities of the State shall, alone, have the power of regulating the slaughtering of cattle and other live stock within their respective limits; *provided*, no monopoly or exclusive privilege shall exist in this State, nor such business be restricted to the lands or houses of any individual or incorporation; provided, the ordinances designating the places for slaughtering shall obtain the approval of the Board of Health or other sanitary organization;" that the aforesaid article of the Constitution is valid and obligatory upon all the inhabitants of this State, both individuals and bodies corporate, and amounts to a revocation of the powers granted plaintiff under the act of 1869, and repeals the monopoly or exclusive privilege created by said statute in plaintiff's favor; that, in accordance with said constitutional provision, the city, through its Council, was about passing an ordinance, with the concurrence of the Board of Health, regulating the slaughtering of cattle and other live stock, within her limits, and designating the places for slaughtering, when arrested and prevented by the injunction herein issued; that no court has a right to enjoin the execution of the Constitution or any portion thereof. Respondent denies that the said provision of the Constitution violates, in any manner, the Constitution of the United States; claims damages to the extent of one thousand dollars, and prays for the dissolution of the injunction.

There was judgment dismissing plaintiff's suit and dissolving the injunction with costs. Plaintiff has appealed.

The intervenor, in his answer to the appeal, prays for an amendment of the judgment so as to decree " that the plaintiff has no exclusive

privilege to keep slaughter-houses, abattoirs or stock landings, in the parishes of Orleans, Jefferson and St. Bernard, or houses for the slaughtering of animals intended for human food; and that plaintiff has no right to restrict such business to its property, lands or houses."

The grounds on which plaintiff relies to obtain the relief sought in this suit, are the following:

1st. "The grant by the State to the company by Act No. 118 of 1869, of the exclusive right to carry on the business of live stock landing and slaughtering in the parishes named, for a period of twenty-five years, is a valid grant, binding upon the State and the citizens of the State.

2d. "The act embodied a contract between the State and the company, the obligation of which is under the safeguard of Art. 1, section 10, of the Constitution of the United States, which forbids a State from passing any law impairing the obligation of contracts.

3d. "Articles 258 and 248 of the Constitution of 1879, so far as they may be construed to abrogate the contract between the State and the company, embodied in the act of 1869, cannot be sustained on the assumption that they were adopted in the exercise of the police power for the promotion of the health of the City of New Orleans and vicinity. So far as those articles may be construed to impair the obligation of the contract embodied in the act of 1869, they are held to be inoperative and void."

The defendants and the intervenor, on their part, contend: That, by Arts. 46, 248 and 258, monopolies are abolished and prohibited; that the exclusive privileges granted to the Crescent City Slaughter-House Company by Act 118, of 1869, were not within the contracting power of the Legislature, but an exercise of the police power, and may be abolished at the will of the people of the State.

The controlling questions for decision are then:

Does the Act No. 118 of 1869, creating this corporation, constitute a contract between the State and the company?

Was that act an exercise of the police power of the State, and, if so, could it legally become the subject of a contract, irrevocable during the term fixed therein?

Do the exclusive rights and privileges accorded by the act, create a monopoly, and, if so, are the monopoly features in the charter of the corporation abolished by article 258 of the Constitution of 1879?

Are articles 248 and 258, so far as they may apply to the features in the act 118 of 1869, obnoxious to the objection that, and inoperative and void because they violate section 10, Art. 1, of the Constitution of the United States?

Act No. 118 of 1869 is entitled "An act to protect the health of the

City of New Orleans, to locate the stock landings and slaughter-houses; and to incorporate the Crescent City Live Stock Landing and Slaughter-House Company." It embraces the following main provisions: Prohibiting the landing, keeping or slaughtering of animals except at the landing of and by the Slaughter-House Company, incorporating the members of the company; defining the limits within which the landings, pens, slaughter-houses, etc., shall or may be constructed or erected; fixing the fees and charges; imposing penalties for violation of the act or interfering with the privileges granted therein; closing all other stock landings and slaughter-houses within the parishes of Orleans, Jefferson and St. Bernard; requiring all animals, the meat whereof is to be for sale in the parishes of Orleans and Jefferson, to be slaughtered in the slaughter-houses thus erected by the company, under the penalties prescribed; requiring the appointment by the Governor of the State of an inspector, clothed with police powers, to inspect all stock that is to be slaughtered; fixing the fees of the inspector and the bond to be given by him to the State; fixing the fees for slaughtering; requiring that all fines and penalties recovered for violation of, or interference with, the privileges granted the company, to be paid, one-half to the company or corporation, in consideration of their prosecution for violation of the act, and the other half to the Auditor of Public Accounts, to the credit of the educational fund; limiting the continuance of the privileges granted to the term of twenty-five years from the passage of the act.

The act of the Legislature, the provisions of which we have just enumerated, constitutes, under the legal definition of the term, *prima facie*, a contract. Parsons in his work on Contracts, vol. 1, p. 6, defines a contract as "an agreement between two or more parties for the doing or not doing of some particular thing." 4 Wheaton, 197; 2 Blackstone Com. 446. It must, therefore, be conceded that, on the face of the act, the incorporation or charter of the company forms a contract, and if it is not liable to the legal objections, that the subject-matter or object contemplated, was beyond the power or right of the contracting parties, is entitled to the protection afforded by the Federal Constitution, which inhibits the impairment of contracts by any legislative, or even constitutional, enactment of a State.

In 23 An. 545, State ex rel. Belden, Attorney, General, vs. Wm. Fagan et al., the Supreme Court of this State held that Act No. 118 of 1869, the object of which was " to protect the health of the City of New Orleans," etc., was " clearly within the police powers of a State." The Court further said: " Does the act of 1869 cease to be a police regulation because it locates the stock landing and slaughter-houses elsewhere and creates a corporation as a means to carry out the legislative will? We think not. The members of the General Assembly were the sole judges

as to the instruments by which they should enforce their police regulations. What the State can do itself, it can do through a corporation. 11 An. 371."

The Supreme Court of the United States, passing upon this question in the Slaughter-House Cases, 16 Wallace, 36, also held in plain and forcible expressions that this act was the exercise of the police power of the State, and was within the power of the Legislature of Louisiana. That distinguished tribunal declared in the case cited : " The authority of the Legislature of Louisiana to pass the present statute is ample, unless some restraint in the exercise of that power be found in the constitution of that State or in the amendments to the Constitution of the United States.

Hence, we are of the opinion that, so far as the restrictions in regard to the landing and slaughtering of stock are concerned, within the limits defined in the act, and the prevention of these beyond their limits, the State exercised the police power as she was competent to do, and the delegation of these powers, to that extent, to the corporation was vested in her discretion and within her authority. In Stone vs. Mississippi, 101 U. S. 814, it was held, Chief Justice Waite being the organ of the Court: " All agree that the Legislature cannot bargain away the police power of a State. Irrevocable grants of property and franchises may be made, if they do not impair the supreme authorities to make laws for the right government of the State; but no legislature can curtail the power of its successors to make such laws as they deem proper in matters of police. 34 N. Y. 657; 94 U. S. 645. Many attempts have been made in this Court and elsewhere to define the police power, but never with entire success. * * * No one denies, however, that it extends to all matters affecting the public health or the public morals." 97 U. S. 25; Id. 501. We think the reasoning of the Court in regard to the right of the State to withdraw the privilege granted to the lottery company, which was under consideration in the case of Stone vs. Mississippi, is strictly applicable to the withdrawal of the particular police power granted or delegated by the Act No. 118 of 1869 of this State. The Court said : " All that one can get by such a charter, is a suspension of certain governmental rights in his favor, subject to withdrawal at will. He has in legal effect nothing more than a license to enjoy the privilege on the terms named for the specified time, unless it be sooner abrogated by the sovereign power of the State. It is a permit good as against existing laws, but subject to future legislative and constitutional control or withdrawal."

In so far as the provisions of Act No. 118 of 1869 conflict with or are repugnant and in opposition to the provisions of article 248 of the Constitution of 1879, such provisions are abrogated, and the police powers necessary to carry them out, which were delegated to the cor-

poration or company, are withdrawn, and by that article are, to the extent covered by its terms and incident thereto, conferred on the police juries of the several parishes and the constituted authorities of all incorporated municipalities of the State. Article 248 of the Constitution is as follows: "The police juries of the several parishes and the constituted authorities of all incorporated municipalities of the State shall alone have the power of regulating the slaughtering of cattle and other live stock within their respective limits; *provided,* no monopoly or exclusive privilege shall exist in this State, nor such business be restricted to the land or houses of any individual or corporation ; *provided,* the ordinances designating the places for slaughtering shall obtain the concurrent approval of the board of health or other sanitary organization."

We think that, so far as the police regulations touching the subject-matter of the limits within which the landing, keeping and slaughtering of animals, prescribed by the Act 118, are involved, article 248 of the Constitution of 1879 does not repeal them. The selection and indication of the limits and localities are fixed by the act; they do not fall within the objections to irrevocable grant of police powers discussed above and considered in the decisions quoted. Until amended or repealed, as regards the mere limits prescribed, they continue in force and effect. The act becomes inoperative only so far as it is abrogated by the constitutional provisions mentioned. It is needless to waste words in any discussion of the question as to the existence of monopoly features in the Act 118. Such features stand forth in the boldest relief. Article 258 of the present Constitution addresses itself directly to them, and they are deprived of force, vitality, and even existence.

Art. 258, reads: " All rights, actions, prosecutions, claims and contracts, as well of individuals as of bodies corporate, and all laws in force at the time of the adoption of this constitution, and not inconsistent therewith, shall continue as if the said constitution had not been adopted. *But the monopoly features in the charter of any corporation now existing in the State, save such as may be contained in the charters of railroad companies, are hereby abolished."* Holding, then, the views which we have hereinbefore expressed, and considering that the act does not create such contract as is protected by the 10th section of Art. 1 of the Constitution of the United States, we are of opinion that the exclusive rights and privileges conferred upon and granted to the company plaintiff, no longer exist, but by operation of the Constitution are abolished.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be affirmed with costs.

Rehearing refused.