CRESCENT CITY LIVE-STOCK LANDING & SLAUGHTER-HOUSE CO.
*v.* BUTCHERS' UNION LIVE-STOCK LANDING &
SLAUGHTER-HOUSE CO.*

*(Circuit Court, E. D. Louisiana. December 30, 1881.)*

1. CONSTITUTIONAL LAW.

The validity of article 248 of the constitution of Louisiana conceded; the validity of article 258 of same constitution doubted; the effect of both on the charter of plaintiff considered.

2. VESTED RIGHTS—POLICE POWER.

When a legislature has granted an exclusive right, and that organ of the government in which is vested the police power with reference to that subject-matter sanctions the exercise of the right as harmless, there exists no power, either in the legislature or the people, to abrogate it.

Application for an Injunction *pendente lite.*

The facts are stated in the opinion of the district judge.

*Thos. J. Semmes* and *Robert Mott,* for complainant.

*B. R. Forman,* for defendant.

PARDEE, C. J. We follow the decision of the supreme court of the state of Louisiana in the case of *Slaughter-house Co.* v. *City of New Orleans,* as reported in 33 La. Ann. 934, in these propositions:

(1) The charter of complainant, act No. 118 of 1869, Louisiana Laws, constitutes a contract.

(2) That the said charter contains monopoly features.

(3) That so far as said act or charter rests upon delegated police power of the state, it may be repealed or impaired by constitutional or legislative authority, without infringing on the constitution of the United States.

*Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

We concede the validity of article 248* of the Louisiana constitution, as delegating the regulation of slaughter-houses to the various municipal authorities. We doubt the validity of article 258† of the same constitution, so far as any retroactive effect is claimed for it, and we deny that said article is or pretends to be an exercise of the police power. And we deny the efficiency of any of the ordinances of the city of New Orleans—as shown in this case—to in anywise deprive complainant of the rights given by his contract and charter, or to convey any of said rights or privileges to defendant.‡

*Section 248 of the constitution of Louisiana, of 1879, provides as follows: "The police juries of the several parishes, and the constituted authorities of all incorporated municipalities of the state, shall alone have the power of regulating the slaughtering of cattle, and other live stock, within their respective limits: provided, no monopoly or exclusive privilege shall exist in this state, nor such business be restricted to the land or houses of any individual or corporation: provided, the ordinances designating the places for slaughtering shall obtain the concurrent approval of the board of health, or other sanitary organization."

†Section 258 of the constitution of Louisiana, of 1879, provides as follows: "All rights, actions, prosecutions, claims, and contracts, as well of individuals as of bodies corporate, and all laws in force at the time of the adoption of this constitution, and not inconsistent therewith, shall continue as if the said constitution had not been adopted. But the monopoly features in the charter of any corporation now existing in the state, save such as may be contained in the charter of railroad companies, are hereby abolished."

‡The charter of plaintiff provided, *inter alia*, (acts of Louisiana of 1869, pp. 169 *et seq.*:)

"Sec. 3. Be it further enacted, etc., that the said company or corporation is hereby authorized to establish and erect, at its own expense, at any point or place on the east bank of the Mississippi river, within the parish of St. Bernard; or in the corporate limits of the city of New Orleans, below the United States barracks; or at any point or place on the west bank of the Mississippi river, below the present depot of the New Orleans, Opelousas & Great Western Railroad Company,—wharves, stables, sheds, yards, and buildings necessary to land, stable, shelter, protect, and preserve all kinds of horses, mules, cattle, and other animals, from and after the time such buildings, yards, etc., are ready and complete for business, and notice thereof is given in the official journal of the state; and the said Cresent City Live-Stock Landing & Slaughter-House Company shall have the sole and exclusive privilege of conducting and carrying on the live-stock landing and slaughter-house business within the limits and privileges granted by the provisions of this act; and cattle and other animals destined for sale or slaughter in the city of New Orleans, or its environs, shall be landed at the live-stock landings and yards of said company, and shall be yarded, sheltered, and protected, if necessary, by said company or corporation; and said company or corporation shall be entitled to have and receive for each, etc.

*    *    *    *    *    *    *    *    *

"Sec. 10. Be it further enacted, etc., that at the expiration of 25 years from and after the passage of this act, (March 8, 1869,) the privileges herein granted shall expire."

In all the cases cited from the supreme court of the United States, (*Slaughter-house Cases*, 16 Wall. 57; *Beer Co.* v. *Massachusetts*, 97 U. S. 25; *Fertilizing Co.* v. *Hyde Park*, Id. 677; *Stone* v. *Mississippi*, 101 U. S. 814,) bearing on the exercise of police power, there is no decision, no argument even, justifying the impairment of the obligations of a contract, by the aid of the police power, in order to transfer property rights or privileges from one individual to another, or from one corporation to another.

In the case of *Beer Co.* v. *Massachusetts*, 97 U. S. 25, a prohibitory law against the sale of malt liquors was maintained, notwithstanding complainant's charter.

In the case of *Fertilizing Co.* v. *Hyde Park*, 97 U. S. 677, a nuisance was allowed to be suppressed by village ordinance, notwithstanding a charter from the state to carry on a fertilizing business at that very place.

In *Stone* v. *Mississippi*, 101 U. S. 814, a penal law prohibiting lotteries was upheld, notwithstanding a charter from the state to carry on the lottery business.

In each of these cases the right of a state, by exercise of the police power, to suppress a business otherwise legitimate, was recognized, although such business existed under chartered rights previously acquired.

But the proposition of the defendant goes much further, and it is, that, under the police power of the state, by virtue of articles 248 and 258 of the state constitution, the contract privileges given by act No. 118, 1869, to the complainant, are not repealed nor suppressed nor policed, but *distributed*, and that, therefore, the defendant may lawfully take up the rights so by police power taken from complainant. And it is to be particularly borne in mind that neither the place, nor the manner, nor the charges, nor the inspection, nor the business of complainant are in any way obnoxious. There is no nuisance, no vice, no illegality tainting the conduct of complainant's business, and consequently there is no question of public health, manners, or morals involved.

Under these circumstances, and with this view of the case, we incline to the opinion that defendant's pretensions cannot be sheltered under a claimed exercise of the police power, and that if articles 248 and 258 of the constitution of Louisiana, and the city ordinances thereunder, are to have the effect claimed by defendant, then it would amount to an impairment of the obligations of complainant's contract

with the state, and come within the inhibition of section 10, art. 1, of the constitution of the United States.

Inclining to these views, and considering the state of the litigation between the parties, (as stated in the argument,) we think an injunction *pendente lite* should issue, to the end that the questions involved may be more fully argued and investigated, and the respective rights of the parties fully protected. A bond to cover damages, if any result, should be given. It is therefore ordered that an injunction pending this suit issue as prayed for, on complainant giving bond in the sum of $——, conditioned according to law.

BILLINGS, D. J., *(concurring.)* I concur in the conclusion reached by the circuit judge. The case finds that in the year 1869 the complainant received from the legislature of Louisiana a grant of a corporate franchise, which was exclusive, to slaughter animals at a place designated in the charter for a period of 25 years; that the constitution of 1879 (articles 248 and 258) attempted to abolish the monopoly features, or the exclusiveness, of all corporations except those contained in the charters of railroads; that the same constitution withdrew from the legislature the power to regulate the slaughtering of animals in cities and parishes, and conferred it upon the municipal and parochial authorities, in conjunction with the local boards of health; that neither the legislature nor the proper municipal authority has ever declared that either the place or manner of conducting complainant's business was opposed to the public good, but that, on the contrary, the municipal and health officers have designated the *locus in quo* of the complainant's business as within a district where said business may be carried on, and have prescribed regulations for the conduct of the business of slaughtering animals, none of which are being violated by complainant.

This case does not fall within the principle that legislative grants of a certain nature may be constitutionally recalled, even where that principle has been pushed to its extreme limit. That principle is that legislatures are clothed by the people with limited power to bind their successors in any matter of public police, and therefore the courts have held that such a grant could not stand in the way of the subsequent action of the police power. The extremist principle, when applied to this case, would lead to the conclusion that if the proper municipal and health boards, in the exercise of the police power delegated to them, declared that complainant's business, either in its

location or its methods, was injurious to the public health, they could regulate, or, if in their judgment the public health required, abolish it; that the grant is voidable and not void; that it is valid until the power, be it the legislature or the municipal officers in which is vested the function to deal with sanitary matters, finds it to be injurious. The conclusion is that where, as here, the proper authorities find the place and manner of conducting the complainant's business to be harmless, there exists no power, either in the legislature or the people of the state, to abate it.    So, according to the cases which have gone the furthest, so long as the place and manner of the complainant's slaughtering of animals are sanctioned by that organ of the government of the state in which is vested the police power with reference to that subject-matter, the action of the legislature in making the grant stands for that of the people of the state, and the exclusiveness of the right granted is protected by article 1, § 10, of the constitution of the United States.    *The Bridge Proprietors* v. *The Hoboken Co.* 1 Wall. 116.