## HOLLAND *v.* CHICAGO, M. & ST. P. R. Co.

*(Circuit Court, D. Minnesota. June Term, 1883.)*

1. **PERSONAL INJURY—CONTRIBUTORY NEGLIGENCE.**

   Plaintiff, intending to cross the railroad where there were three or four tracks, looked east and west for approaching trains, and saw a freight train coming from the west on the second track; waited for that to pass, and immediately thereafter crossed onto the next track, and on stepping thereon was run over

by a passenger train coming from the east, and was injured. The view to the east was uninterrupted for 1,500 to 1,600 feet, and if the plaintiff had looked to the east after the freight train had passed he must have seen the passenger train. No whistle was sounded nor bell rung, nor other signals given. *Held,* that though no signals were given, the plaintiff was guilty of such contributory negligence that his right to recover would be thereby defeated.

Following *Railroad Co.* v. *Houston,* 95 U. S. 697, and *Schofield* v. *Railroad Co.* 2 McCrary, 268; [S. C. 8 FED. REP. 488.]

2. SAME—PROTECTION OF EMPLOYE BY EMPLOYER.

While it is true that an employe, while working in a dangerous place, where he is required to give his attention to the work in hand, is entitled to rely on the fact that the employer, knowing such to be the fact, will exercise due care and diligence to protect his employe from danger not directly arising from said work, yet this rule will not apply in the case of an employe who, walking across a track to get his tools, is run over by an approaching train, for the reason that, the act of walking being automatic, it is not such an act as would engross a man's attention to such an extent that with ordinary care and diligence he would not see or hear an approaching train.

Construing *Goodfellow* v. *Railroad Co.* 106 Mass. 461.

At Law.

The case is fully set out in the opinion of the court. At the conclusion of plaintiff's testimony the defendant moved the court to instruct the jury to find a verdict for the defendant, on the ground that the plaintiff, on his own showing, contributed to the injury by his own negligence, and therefore cannot recover. Plaintiff's counsel urged that he was entitled to recover on three grounds:

*First.* That defendant was obliged to keep his premises in a proper and safe condition, so as not to expose his employes to any unusual or unexpected danger which might have been guarded against by proper diligence on his part; citing *Hough* v. *Railroad Co.* 100 U. S. 213; *Wabash Ry. Co.* v. *McDaniels,* 11 Amer. & Eng. Ry. Cas.; *Buzzell* v. *Laconia Manuf'g Co.* 48 Me. 116; *Dick* v. *Railroad Co.* (Ohio,) 8 Amer. & Eng. Ry. Cas. 101.

*Second.* That where an employe's attention is occupied by the work he is engaged in, he is entitled to rely upon the employer using diligence and care to protect him while thus engaged, and that the plaintiff's attention was drawn to the necessity of reaching the tool-chest where the tools were with which he was to work for the defendant, and that the defendant, having failed to give signals or warning of the approaching passenger train, was derelict in its duty to this plaintiff, and plaintiff is entitled to recover therefor; citing *Goodfellow* v. *Railroad Co.* 106 Mass. 461; *Snow* v. *Railroad Co.* 8 Allen, 441.

*Third.* That if any care or diligence in looking out for the approaching train and guarding against accident is shown to have been used by plaintiff, the question of the sufficiency of the care and diligence is a question for the jury, and not one for the court to pass upon, and therefore it having been shown that the plaintiff did look up and down the track before the freight train passed, the same was an act of care and diligence on his part; and the defendant having been guilty of negligence in not giving any signals or warning of the

approaching train, the whole question of diligence or negligence should be submitted to the jury; citing *Johnson* v. *Bruner*, 61 Pa. 58; *Kellogg* v. *Railroad Co.* 79 N. Y. 72; *Chaffee* v. *Railroad Co.* 104 Mass. 108.

*S. L. Pierce*, for plaintiff.

*Bigelow, Flandrau & Squires*, for defendant.

SHIRAS, J.   Since the adjournment of the court last night I have considered the motion made in this case of *Holland* v. *Chicago, Milwaukee & St. Paul Railway Company*.   The motion was made at the close of the plaintiff's testimony that the court instruct the jury that under the evidence as submitted by the plaintiff he has failed to make out a case, and therefore it is their duty to return a verdict for the defendant.   The testimony in this case presents no dispute as to the question of facts; the case really turns upon the testimony of the plaintiff given directly by himself.   With regard to the witnesses the case shows no disagreement among them as to the facts, and as to the facts as shown by the plaintiff's own testimony, with regard to which there is no dispute.   Now, of course, the general rule applies to this case, that the plaintiff to recover must show fault or negligence on the part of the defendant causing the injury complained of, and that would not enable him to recover if it appears from the testimony that the plaintiff himself has been guilty of contributory negligence which would defeat his cause of action.   The rule of law being briefly stated, is that where the evidence shows that both parties are in fault there can be no recovery for the plaintiff.

It is clearly in testimony that Holland, this plaintiff, was in the employ of the railroad company as a laborer, engaged in the excavation of a certain part of the defendant's road known as the short line; that the tools which were used in this excavation were kept on one side of the track in a tool-chest, and it is conceded it was a proper place or site for said tool-chest, which was provided for that work upon the bank.   It seems that the place where this tool-chest lay was on the opposite side of the bank from where the excavation was being done, and across the railroad track, and at that place there were three or four tracks; as to the number, whether three or four, the evidence leaves in doubt.   The plaintiff came down to his work in the morning, and when he came there, in order to reach the tool-chest, he had to cross these tracks.   He went that way across the tracks the first day to obtain his tools, and the second morning he came down the same way to go to his work, where, as far as the evidence shows, he had a perfect right to cross.   He went there in order to go to the place where the tools were to do the work which he had engaged with the railroad company to do.   His testimony shows that as he came down that morning he discovered upon the first track,—a side track, or whatever it may be termed,—it was the one nearest the embankment; that there were some empty flat cars that were being pulled out of the way, or had just gone out of the way, so

that he could get past the track without difficulty. Then, upon the next track, when he came to that, he looked up and down the track for the purpose of seeing whether there was anything in the way to prevent his crossing, and coming in one direction he saw a freight train that was coming down on that second track. The evidence shows that from where he was he could see down the track towards the city, a distance of 1,500 or 1,600 feet, provided there was nothing in the way, and no cars to interrupt his sight. As far as the topography of the ground and the location of the track were concerned, he could see that distance. He came down to the track, and looked up and down, and saw this freight train coming down on the second track, and, using his judgment and calculation, he determined not to pass over the track until the freight train passed, and therefore waited for the freight train to go by, so that he could pass by it. He states it took about a couple of minutes, or some such time as that, for the freight train to pass by, so that he could pass over that track. After the freight train had gone by on that track, he then passed immediately in the rear of that train which brought him to the third track, which was the one where the passenger train was, and where the accident occurred. His testimony shows that when he came to that, and when he passed over the second track, he felt so confident that there was no danger of anything to interfere with his doing so, that he walked straight forward onto the main track, and in doing so walked right in front of the train of cars, and was injured.

In regard to all these facts there is no dispute, and there are no conclusions to be drawn from them, so far as the facts are concerned. The supreme court of the United States, in the decision in 95 U. S. 697, (*Railroad Co.* v. *Houston,*) which was referred to by counsel in the argument, gives the rule to be observed, which is also fully set forth in the opinion of Judge McCRARY in *Schofield* v. *C., M. & St. P. Ry. Co.* 2 McCrary, 268; [S. C. 8 FED. REP. 488.] Supposing the evidence, just as it stood, were submitted to the jury, and the jury should find affirmatively for the plaintiff,—find, for instance, that the plaintiff had not been guilty of contributory negligence,—could the court, upon a motion for a new trial, let the verdict stand as justified by the facts, and as a finding upon the question of fact? If the case should not go to the jury, it is the duty of the court, in a case of this kind, to take the case away from the jury by giving them the instruction that is asked in this case; bearing in mind that the real question is whether the evidence would sustain a finding by the jury that the injury complained of was caused by the negligence of defendant, and upon the issue of contributory negligence that the plaintiff, in doing what he did do, exercised the care required of him in the situation in which he was placed.

A very ingenious argument has been made by counsel for plaintiff, based upon a line of authorities produced before the court to show

that, under the circumstances, the plaintiff had a right to do what he did, upon the theory that, in the first place, he had a right to rely upon the fact that the company itself would do whatever was proper for this company to do for his protection, in giving signals, or whistling, or warning him by ringing a bell, or anything that it should have done to protect its employes; that he had a right to rely upon it that the company would do all that care and prudence upon its part would require to be done; and that the court must hold that under the evidence the company did not do what was required of them, because there was no signal or warning given to the employes of the coming of the train.

Argument is also made, based upon a line of authorities cited, that where the employe is by reason of his employment placed in a dangerous position, and he is required to devote his time and attention to the work that he is engaged in doing, that that will excuse him from being as alert as he otherwise would be to the danger of his position. The rule laid down in the authorities cited is to be applied when the facts of the case require it, and this arises ordinarily in cases in which the employe is required, by the very work he is to do, either to be upon the track, or in some such place of danger. Many cases arise where employes are required to go upon or under cars to make repairs on the cars while on the track. It is plain that where the railroad company requires an employe to go under a car to repair it, the duty devolves upon the company to see that no other car is sent down upon that car, so as to move the car upon which the employe is at work. Or in case an employe is sent to work in a place where danger lies, while he is performing such work he has a right to rely upon the company exercising due care to protect him in his work.

In the *Derrick Case*, 106 Mass. 461, (*Goodfellow* v. *Railroad Co.,*) cited by plaintiff's counsel, where the employes were required to be on the track and hold a rope attached to a derrick, it was necessary, for the safety and protection of others, that the men who had hold of the rope should give their attention to that matter. When they were placed in that position, and the railroad company knew that fact, there was a duty laid upon the railroad company to see that no injury happened to them; and in all these cases, extreme as they are, the rule is still recognized by the courts that the employe is not relieved from exercising the care which he should exercise, considering the work in which he is engaged. In other words, if there is recklessness and carelessness on the part of the employe, it will still defeat his right of recovery.

Now, in this case, the undisputed evidence, as I said before, shows that the man was not engaged in any work that required his attention. He was simply walking across the track, and if there is anything that becomes automatic, it is the act of walking or going from one place to another. We do not direct our attention to the act of lifting one foot and then putting it down; it is done without the ex-

ercise of thought on our part, and is necessarily an automatic action. It was not necessary for him to give much attention to it, aside from the fact of where he was walking. When he walked, he walked automatically. A man, when he is walking, can give his attention to what is taking place about him. It is a very different state of facts from where a man is required to do a mechanical piece of work, and where he cannot do it properly unless he devotes his time and attention to that piece of work. In this case, therefore, the query is whether the jury would be justified, under the state of facts as narrated by the plaintiff and his witnesses, in saying that where a person is coming down for the purpose of crossing a railroad track, or an employe is coming down for that purpose, where are several tracks, and he finds a train upon one track, and waits for that to pass him, and after that goes past him he can deliberately walk across to another track, on which he knows trains frequently run, without using his senses of sight or hearing, and still be in the exercise of due care.

The evidence in this case shows that this train, by which the plaintiff was injured, was running at a rate of 15 miles an hour,—the testimony says 14 to 16, and so it is fair to hold it was running at the rate of 15 miles an hour. He walked across that track, and, walking at an ordinary pace, must have been going at a rate of about three miles an hour, or at the rate of three miles to the train running fifteen. In other words, the train was going five times as fast as the man. Taking these figures, we find that in computing the distance which this man had to walk we must allow the width of the railroad track, being, as is well known, four feet eight and one-half inches between the rails, which he would have to cross; and that, of course, does not represent the whole distance, because there is the distance between the two tracks to be taken into account, which is more than the four feet eight and one-half, and is at least seven or eight feet, according to the testimony. Then, again, it is a matter of common observation that when we are standing by a railroad track, and a train is going by, we do not stand right up against the track; therefore it is clear that this man stood back more or less when the freight train went by him, and then having to pass that distance between where he stood, and then across the track over where the freight train had passed, and then the distance between that track and the next track, he would have to pass a distance of 15 to 20 feet from where he started up to the first line of the track on which the passenger train passed. The case, therefore, comes down to this: that during the time he was passing this 20 feet, the train would have run at least a hundred feet, as we have shown it was running five times as fast as the plaintiff was walking. So the uncontradicted evidence shows, therefore, that after this freight train passed by, and this passenger train was running towards him, he walked right towards the track, passed over a distance of 15 or 20 feet, and, without using his eyes or ears, deliberately goes onto the passenger train track, and was run down.

I cannot conceive of a case that shows contributory negligence more clearly than this. The slightest use of his eyes or his ears would have shown him that the train was coming; the merest glance of the eye would have discovered that fact. He swears himself he never looked, and never saw the train until he was struck. When he stepped upon that track the train must have been within 10 feet of him, and yet he did not see it and did not hear it.

The only ground upon which the company could be held to be liable would be a failure to give signals. What is that idea of giving signals based upon? It is based upon the theory that the person to whom the signal is given will take notice of it. Signals are given by a railroad company to direct the sight or hearing. In these places warnings are frequently given by flag signals; and, according to the position of affairs as given in testimony by the plaintiff himself, if there had been a dozen flagmen to give these signals, and if these signals had been given, it is evident that this man would not have seen them, and they would have been of no use whatever. Here was a large train, running at a rate of 15 miles an hour; his own testimony shows he did not look for it or see it. It would seem a hard case to hold that the company must be held liable because it did not give any signals, which, if they had been given, would not have benefited this plaintiff.

I do not base my ruling upon that question, however. Upon the ground of public policy it is not proper for the court or jury to adopt a rule which will free men from using a fair degree of care and diligence when they are in the position where, for their own safety, and for the safety of others, it is necessary they should act with care and prudence.

To my mind the plaintiff's own testimony shows clearly that there was culpable carelessness on the part of this plaintiff; and if the jury should find, on its being submitted to them, that he was in the exercise of due care, (and otherwise, they could not find a verdict for him,) it would be my duty to set the verdict aside.

The motion will be granted, and the jury will be instructed to find a verdict for the defendant.

Ordered accordingly.

See *Mackoy* v. *Missouri Pac. Ry. Co., ante,* 236, and references; *O'Neil* v. *St. Louis, I. M. & S. Ry. Co.* 9 Fed. Rep. 337, and note, 341.