MICHAEL SOBIESKI *vs.* ST. PAUL & DULUTH RAILROAD COMPANY.

July 2, 1889.

**Railway—Negligence—Switchman Injured by Locomotive.**—A railroad switchman, while running upon the track at station grounds, when he might, but with some inconvenience, have been outside the track, was overtaken and injured by a locomotive, which was moved without the customary signal. *Held*, to present a proper question for the jury whether he was chargeable with contributory negligence.

**Same—Duty of Engineer to Signal—Parol Proof of Rules.**—Parol proof that the defendant's rules required the engine bell to be rung was properly received, it not appearing that there was a better kind of proof of such regulation. Independently of rules prescribed by the company, the law would imply a duty to give a signal of the movement of an engine, under the circumstances.

**Same—Release—Fraud.**—Evidence as to fraud in procuring a release of an existing cause of action considered.

**Same — Accord and Satisfaction — Money Paid as "Wages."**—Voluntary payment of money to an employe, injured by the negligence of the defendant, merely as "wages" during the period of disability, does not constitute a satisfaction of the cause of action.

**Same—Damages.**—Verdict sustained as to the amount of the recovery.

Appeal by defendant from an order of the district court for St. Louis county, *Stearns*, J., presiding, refusing a new trial after verdict of $7,000 for plaintiff.

*James Smith, Jr.*, and *W. A. Burr*, for appellant.

*Edson & Hanks* and *Edmund Sherwood*, for respondent.

DICKINSON, J.  This action is to recover for personal injuries suffered by the plaintiff from being run over by a locomotive of the defendant at its station grounds in Duluth. The principal question which we have been called upon to consider is whether the case shows contributory negligence on the part of the plaintiff, so that the verdict in his favor cannot be sustained. The claim of the plaintiff that the engine by which he was injured was started from a stationary position near the place of the accident, and run until he was struck,

without any signal by bell or otherwise, is so well sustained by the evidence that the verdict of the jury, so far as it involves the matter of the defendant's negligence, cannot now be disturbed. Assuming this to have been true, there is not much controversy concerning the facts bearing upon the issue as to the plaintiff's negligence. The evidence was such that now, after verdict, the facts may be taken to have been as follows: The plaintiff was a servant of the defendant, employed as a switchman at Duluth, working in connection with the operations of a switch-engine. He had been for 11 years engaged in work of that kind. For about four years he had been in the employ of the defendant. For convenience of description, we will say that the main track of the railroad was laid in an east and west course. On either side of it, north and south, were side tracks, parallel with it, and connected with it by switches. On the 19th of December, between 7 and 8 o'clock in the morning, while the engine with which the plaintiff was at work was standing upon the north side track, it became necessary for the plaintiff to go south-easterly across the main track about 600 feet to get some coupling links and pins, in order to make some couplings in connection with the operations of his switch-engine. Having procured them, in returning to his engine, having reached the main track, he ran along it between the rails toward the west, in the direction of his own engine. As he did so he saw and passed the engine by which he was injured, which was then standing upon the south side track. After he had passed this point, this engine ran easterly by a switch to the main track, and backed west on the main track, overtaking the plaintiff, and running over him. No signal, by bell or otherwise, as we must now consider, was given of the starting of the engine, or when, having reached the main track, the direction of its movement was reversed, and it ran west to the place of the accident. The distance of the movements to which we have referred was not great. It does not appear that the plaintiff's whole course along the main track was more than about 300 feet. The plaintiff knew when he saw this engine standing on the side track that it would run out on the main track, and go west as it did, but did not know when this would be done. He did not see it start, and was in no way notified of its movements until the instant it struck him.

It was the known custom to indicate the movement of engines by the ringing of the bell. There was room for the plaintiff to have travelled along the road between the main and side tracks, but in doing this he would have had to wade in snow to a considerable depth, variously estimated by the witnesses at from six or eight inches to between one and two feet, while between the rails of the main track was a beaten path where others had travelled.

Not much need be added to this statement of the case to indicate the reason for our conclusion that the determination of the jury upon the issue of the plaintiff's negligence was reasonably justified. It is true that there was some danger incurred. But danger in some decree was necessarily incident to the plaintiff's employment; and, while it might have been clearly a case of negligence if one whose duty did not require him to be about these premises were to have placed himself in the position of the plaintiff, it does not necessarily follow that he is to be deemed to have been wanting in that degree of care which ordinarily prudent men might be expected to exercise under like circumstances. He was familiar with these surroundings; and the danger which he might ordinarily encounter and be cognizant of would not be likely to disturb the harmonious action of his mental faculties, or impel him to an unreasonable course of conduct. He knew the signals indicating danger, and understood their import. His attention was to be given not merely to his own personal safety, but also in due degree to the discharge of the duties which kept him constantly about and upon the railroad track. He was required to cross this track. He seems to have been in some haste, and reasonably so, as we must presume. It does not appear that there was any engine on the main track, nor that there was anything to prevent his hearing the bell, if an engine should be moved with the signal which he might reasonably expect would be given. There was an obvious inducement towards following for this short distance the beaten path, in his haste to do what was required of him, rather than to go outside of it in snow of considerable depth. We refer to these considerations, not as expressing our own opinion that this was not negligence, but as suggesting reasons which may be deemed to have properly affected the minds of the jury in determining whether in their

judgment the plaintiff's conduct was within the limits of ordinary prudence, such as prudent men, engaged in the same or like occupation, accustomed to the same surroundings, and having due regard both to their own safety and to the duties resting upon them, would exercise. It was a question of fact for the jury, and we see no sufficient reason for setting aside their conclusion.

There was no error in receiving parol evidence that the rules of the railroad company required the ringing of the bell as a signal when an engine was about to start. It did not appear that there was evidence of a better nature. But, aside from this, the law itself, in the absence of proof, would imply the duty of giving a signal in such a place, so that this duty rested upon the engineer, whether his employer expressly imposed it or not. The custom of giving such a signal was proved without objection.

On the 4th of February, after the injury, an agent of the defendant paid to him $250, and persuaded him to sign a release, discharging the defendant from any further liability. Only the plaintiff and his wife were present. Neither of them could read or write in the English language. Their testimony is to the effect that the defendant's agent proposed to pay this sum for wages for four months, and stated that when the plaintiff should be so far recovered as to enter upon duty again the company would give him such employment as he could perform; that they understood this release, although it was read to them, to be a receipt for the money paid as wages; and that the agent so represented to them. The testimony of this agent could not be procured at the trial, but it was admitted that he would testify that there was no misrepresentation, and that the release was read and fully explained to the plaintiff. The issue of fraud thus presented was properly submitted to the jury, and there was sufficient evidence to sustain the verdict in this particular. This payment was voluntarily made by the defendant, of its own motion, and not upon a demand for compensation made by the plaintiff. This distinguishes the case from that of *Hinkle* v. *Minn. & St. Louis Ry. Co.*, 31 Minn. 434, (18 N. W. Rep. 275.) The last sentence in the opinion in that case points out a sufficient distinction between that case and this.

The jury award $7,000 to the plaintiff as damages. The injury consisted chiefly in the loss of one arm below the elbow. The plaintiff was 30 years of age, with a family depending upon him for support. This recovery seems to us to be large, but we see no reason to suppose that it does not express the honest, unprejudiced estimate of the jury, and, as the trial court has refused to modify it, we do not feel justified in setting it aside.

Order affirmed.