## J. B. DAVY v. GREAT NORTHERN RAILWAY COMPANY.

(128 N. W. 311.)

**Negligence — Question for Jury — Master and Servant — Injuries to Servant.**

1. Defendant's passenger station is located at the western edge of the village of Bartlett. There are no buildings or crossings west of the station in the vicinity of said village, but a passing track extends at a distance of a few feet north of the main track, 2,000 feet west of the station. Defendant's railroad had been blockaded for two days, during which no trains had passed Bartlett station. At 8 o'clock in the morning the plaintiff, with others, was sent to do some work at a point 1,600 feet west of the station. On starting he was told by the night operator that no trains were coming, and observed that the block signal was out as a notice to all trains to stop at the station. When 1,400 feet west of the starting point he was struck by a snowplow running as the first section of No. 1, a limited passenger train. The weather was very cold, little wind was blowing, and he, with his companions, wore fur-lined coats, with the collars turned up and their caps pulled over their ears, and did

Note.—As shown by a review of the cases in a note in 6 L.R.A.(N.S.) 646, the authorities are not entirely agreed as to the measure of care which an employee working on a railroad track must exercise for his own safety, and the question whether or not an employee has been guilty of contributory negligence must necessarily depend, to a great extent, upon the particular circumstances of each case.

not look back while going the 1,400 feet. The bell in the engine was obstruct-- ed by snow and ice, and could not be rung, but the whistle could be blown.. The jury found that it was not blown, and that no warning was given after passing a crossing several hundred feet east of the station, and it was con- ceded that no stop was made at the station.

*Held*, that under the circumstances the court could not say, as a matter of law, it was negligence on the part of the engineer not to blow the whistle after passing the station, but that the question of negligence was for the jury.

**Master and Servant — Section Hands — Assumption of Risk — Contribu-- tory Negligence.**

2. While, as a general rule, track or section men assume the risks from, dangers incident to their occupation, and must protect themselves from ap- proaching trains, especially where not at the time occupied with duties requir- ing their whole attention, there are exceptions to this rule, and among such ex- ceptions are cases in which circumstances and conditions are extraordinary or exceptional, in which case the question of contributory negligence may be for the jury.

**Master and Servant — Injuries to Servant — Contributory Negligence — Question for Jury.**

3. *Held*, that under the circumstances of this case the court could not say that, in law, the plaintiff was guilty of contributory negligence in not watching for trains when walking on the track a distance of 1,400 feet west from the station at the village of Bartlett, and that it was for the jury.

**Master and Servant — Injuries to Servant — Contributory Negligence — Evidence.**

4. In determining whether the plaintiff was guilty of contributory negligence the jury had a right to take into consideration information which he had re- ceived from the night operator and the position of the block signal, as well as. other surrounding circumstances.

**Master and Servant — Injuries to Servant — Question for Jury.**

5. The question for the jury in this case was whether an ordinarily prudent person would have been justified in not expecting a train to pass during the time plaintiff was occupied in walking from the station to the place where he was overtaken and injured.

**Master and Servant — Injuries to Servant — Negligence Question for Jury.**

6. The fact that the legislature has required the sounding of a whistle or ringing of a bell at certain places does not relieve the railroad company from giving a signal at other places where none is exacted by statute, provided reasonable care for the safety of its employees or others makes it necessary..

**Evidence — Master and Servant.**

7. Certain minor questions regarding the admission of evidence passed upon..

Opinion Filed October 12, 1910.

Appeal ·from District Court, Grand Forks county; *Templeton,* J.

Action by J. P. Davy against Great Northern Railway Company for personal injuries.

Plaintiff had judgment. Order denying new trial reversed and new trial granted.

*Murphy & Duggan,* for appellant.

Railway employees, such as section hands, must look out for trains, and train operators may assume this, and are not bound to keep look- out for them, 3 Elliott, Railroads, §§ 1290–1298 A; 4 Thomp. on Neg. § 4781; Missouri P. R. Co. v. Moseley, 6 C. C. A. 641, 12 U. S. App. 601, 57 Fed. 924; Bedford Quarries Co. v. Bough, 168 Ind. 671, 14 L.R.A.(N.S.) 418, 80 N. E. 529; Ellis v. Southern R. Co. 90 C. C. A. 270, 163 Fed. 686; Shepard v. Boston & M. R. Co. 158 Mass. 174, 33 N. E. 508; Lynch v. Boston & A. R. Co. 159 Mass. 536, 34 N. E. 1072; Bergston v. Chicago, St. P. M. & O. R. Co. 47 Minn. 486, 50 N. W. 531; McCadden v. Abbot, 92 Wis. 551, 66 N. W. 694; Chicago, R. I. & P. R. Co. v. Houston, 95 U. S. 697, 24 L. ed. 542; Nixon v. Chicago, R. I. & P. R. Co. 84 Iowa, 331, 51 N. W. 157; Lor- ing v. Kansas City, Ft. S. & M. R. Co. 128 Mo. 349, 31 S. W. 6; Grand Trunk R. Co. v. Baird, 36 C. C. A. 574, 94 Fed. 950; Olson v. St. Paul, M. & M. R. Co. 38 Minn. 117, 35 N. W. 866; Railway Co. v. Leech, 41 Ohio St. 391; Wabash R. Co. v. Skiles, 64 Ohio St. 458, 60 N. E. 576; Spicer v. Chesapeake & O. R. Co. 34 W. Va. 514, 11 L.R.A. 385, 12 S. E. 553; Christy v. Chesapeake & O. R. Co. 35 W. Va. 117, 12 S. E. 1111; Everett v. Great Northern R. Co. 100 Minn. 309, 9 L.R.A.(N.S.) 703, 111 N. W. 281, 10 A. & E. Ann. Cas. 294; New York, C. & St. L. R. Co. v. Martin, 35 Ind. App. 669, 72 N. E. 654; Harty v. Central R. Co. 42 N. Y. 468; Cleveland, A. & C. R. Co. v. Workman, 66 Ohio St. 509, 90 Am. St. Rep. 602, 64 N. E. 582; Hinz v. Chicago, B. & N. R. Co. 93 Wis. 16, 66 N. W. 718; Baker v. Chicago, R. I. & P. R. Co. 95 Iowa, 163, 63 N. W. 667; Guthrie v. Great Northern R. Co. 76 Minn. 277, 79 N. W. 107; Schulz v. Chicago, M. & St. P. R. Co. 57 Minn. 271, 59 N. W. 192; Murran v. Chicago, M. & St. P. R. Co. 86 Minn. 470, 90 N. W. 1056; Jolly v. Detroit, L. & N. R. Co. 93 Mich. 370, 53 N. W. 526; Beach, Contrib. Neg. §§ 133–138.

Rule different where employment engages the whole attention.

Blount v. Grand Trunk R. Co. 9 C. C. A. 526, 22 U. S. App. 129, 61 Fed. 375; 20 Am. & Eng. Enc. Law, p. 145, and cases cited; Holland v. Chicago, M. & St. P. R. Co. 18 Fed. 243.

Employees must anticipate train's approach at any time.   Loring: v. Kansas City, Ft. S. & M. R. Co. 128 Mo. 349, 31 S. W. 6; Shepard v. Boston & M. R. Co. 158 Mass. 174, 33 N. E. 508; Olson v. St. Paul, M. & M. R. Co. 38 Minn. 117, 35 N. W. 866.

Persons on track away from stations or crossings have no right to rely upon signals.   Reynolds v. Great Northern R. Co. 29 L.R.A. 695, 16 C. C. A. 435, 32 U. S. App. 577, 69 Fed. 808; Kirtley v. Chicago, M. & St. P. R. Co. 65 Fed. 386; Blount v. Grand Trunk R. Co. 9 C. C. A. 526, 22 U. S. App. 129, 61 Fed. 375; Olson v. St. Paul, M. & M. R. Co. 38 Minn. 117, 35 N. W. 866; Magee v. Chicago & N. W. R. Co. 82 Iowa, 249, 48 N. W. 92; Holland v. Chicago, M. & St. P. R. Co. 18 Fed. 243; Nixon v. Chicago, R. I. & P. R. Co. 84 Iowa, 331, 51 N. W. 157.

It was contributory negligence to walk on track without any observance as to approaching trains.   Ring v. Missouri P. R. Co. 112 Mo. 220, 20 S. W. 436; Hammond v. Chicago & G. T. R. Co. 83 Mich. 334, 47 N. W. 965; Keefe v. Chicago & N. W. R. Co. 92 Iowa, 182, 54 Am. St. Rep. 542, 60 N. W. 503; Hinz v. Chicago, B. & N. R. Co. 93 Wis. 16, 66 N. W. 718; Illinois C. R. Co. v. Lee, 71 Miss. 895, 16 So. 349.

*Calder & Germain,* and *Guy C. H. Corliss,* for respondent.

It was negligence to run a train through a yard, near a station, at high speed, in a blinding snow storm, with snowplow throwing clouds of snow, the bell being "out of commission," without giving signals to persons lawfully on the track.   St. Louis & T. H. R. Co. v. Eggmann, 60 Ill. App. 291, affirmed in 161 Ill. 155, 43 N. E. 620; Coulter v. Great Northern R. Co. 5 N. D. 568, 67 N. W. 1046; Chicago & A. R. Co. v. Dillon, 123 Ill. 570, 15 Am. St. Rep. 559, 15 N. E. 181; Kelly v. Southern Minnesota R. Co. 28 Minn. 98, 9 N. W. 588; Guggenheim v. Lake Shore & M. S. R. Co. 66 Mich. 150, 33 N. W. 161; Anderson v. Great Northern R. Co. 15 Idaho, 513, 99 Pac. 91; Nichols v. Chicago, B. & Q. R. Co. 44 Colo. 501, 98 Pac. 808; Gesas v. Oregon Short Line R. Co. 33 Utah, 156, 13 L.R.A.(N.S.) 1074, 93

Pac. 274; Illinois C. R. Co. v. Murphy, 123 Ky. 787, 11 L.R.A. (N.S.) 352, 97 S. W. 729.

An employee not under obligations to expect a train is not guilty of contributory negligence if he fails to keep a lookout. Sobieski v. St. Paul & D. R. Co. 41 Minn. 169, 42 N. W. 863; Scott v. St. Louis, I. M. & S. R. Co. 79 Ark. 137, 116 Am. St. Rep. 67, 95 S. W. 490, 9 A. & E. Ann. Cas. 212; French v. Taunton Branch R. Co. 116 Mass. 537; McGhee v. White, 13 C. C. A. 608, 31 U. S. App. 366, 66 Fed. 502; Ferguson v. Wisconsin C. R. Co. 63 Wis. 145, 23 N. W. 123; Phillips v. Milwaukee & N. R. Co. 77 Wis. 349, 9 L.R.A. 521, 46 N. W. 543; Duane v. Chicago & N. W. R. Co. 72 Wis. 523, 7 Am. St. Rep. 879, 40 N. W. 394; Palmer v. Detroit, L. & N. R. Co. 56 Mich. 1, 22 N. W. 88; Chicago & E. I. R. Co. v. Hedges, 105 Ind. 398, 7 N. E. 801; Baker v. Kansas City, Ft. S. & M. R. Co. 122 Mo. 533, 26 S. W. 20; Bowen v. New York C. & H. R. R. Co. 89 Hun, 594, 35 N. Y. Supp. 540; York v. Maine C. R. Co. 84 Me. 117, 18 L.R.A. 60, 24 Atl. 790; Randall v. Connecticut River R. Co. 132 Mass. 269; Alabama & V. R. Co. v. Summers, 68 Miss. 566, 10 So. 63.

Employee is not careless who assumes that the railroad company will not be. Elgin, J. & E. R. Co. v. Hoadley, 220 Ill. 462, 77 N. E. 151; Thomp. Neg. §§ 3772, 4518, 4519; St. Louis & T. H. R. Co. v. Eggmann, 60 Ill. App. 291, affirmed in 161 Ill. 155, 43 N. E. 620; Shoner v. Pennsylvania Co. 130 Ind. 170, 28 N. E. 616, rehearing 130 Ind. 179, 29 N. E. 775; Atchison, T. & S. F. R. Co. v. McElroy, 76 Kan. 271, 13 L.R.A.(N.S.) 620, 123 Am. St. Rep. 134, 91 Pac. 785.

Employee can lawfully rely on night operator's statement as to movement of trains. Gesas v. Oregon Short Line R. Co. 33 Utah, 156, 13 L.R.A.(N.S.) 1074, 93 Pac. 274; Sheridan v. Baltimore & O. R. Co. 101 Md. 50, 60 Atl. 280; Texas & N. O. R. Co. v. McDonald, — Tex. Civ. App. —, 85 S. W. 493.

The plaintiff brought this action against the defendant railroad company to recover for injuries received by being struck by a snow-plow operated by defendant. The appeal is from an order denying judgment notwithstanding the verdict and a new trial, and from the

judgment entered on the verdict in favor of the plaintiff. In brief the case may be stated as follows: About 8 o'clock on the morning of January 25, 1907, plaintiff, who was in the employ of the defendant as section hand at Bartlett station, in company with three other section hands, was sent by the foreman from the station at Bartlett to shovel snow into an engine standing on the passing track about 1,600 feet west of the station. A blizzard had been raging two days prior to the accident, and the line of the defendant was blockaded and trains were tied up. At this station, about 8 feet north of the main track, is a passing track extending for a distance of 2,000 feet east and a like distance west of the station house. Passenger train No. 6 had been stalled on the passing track for more than twenty-four hours. It was east bound, with two engines, and the first engine was about 50 feet west of the depot door, and the train extended westerly 500 or 600 feet. There was a little breeze from the northwest, and the temperature was about 30 degrees below zero. Plaintiff and his companions were dressed in fur-lined coats, the collars turned up, and their caps were drawn down over the ears. Plaintiff testifies that before he left the station he was told by the night operator that no trains were coming, and, when he left the depot, the block signal was out. The operator denies telling him so. This block signal standing out was to notify incoming trains to stop at the station. Passenger train No. 1 is a through limited train running west, and passes through Bartlett station at full speed, or nearly so, without stopping. A crew consisting of an engineer and firemen and brakeman and others was sent west from Grand Forks on the 26th, with orders to run as the first section of No. 1, and clear the track of snow. This crew was in charge of an outfit, consisting of an engine preceded by a car loaded with coal to hold it down, and on the front of which was a snowplow with high flanges. Plaintiff and his companions walked west on the main track for the reason that the stalled passenger train prevented their walking on the side track, and after passing the train it was easier to walk on the main track than on the side track, because there was less snow on the latter. When they had proceeded about 1,400 feet west from the station, one of plaintiff's companions happened to turn his head to the rear, saw the snowplow close upon them, and warned his companions to jump. All succeeded in clearing the snowplow except

the plaintiff, who was hit and injured. No question is made as to the amount of the verdict; it being conceded that, if he is entitled to recover at all, the judgment of $2,000 is not excessive. The engineer had been directed to open up the line for trains following and those which might be stalled ahead of him. The bell was clogged with snow, and could not be rung; and the engineer was advised at different stations, including Lakota, 4 miles east of Bartlett, that the track was clear. It is shown that in opening a snow blockade it is necessary to maintain a speed of about 25 miles per hour to do effective work, and inasmuch as the snow is generally deeper around station buildings and in yards than in the open country, high speed must be maintained while passing stations to avoid getting stalled. The station whistle was given for Bartlett. About 250 or 300 feet east of the depot is a crossing. The evidence is in conflict as to whether the whistle was blown for that crossing, but the jury found that it was not. It is the custom of the road for the engineer to give a certain whistle as a signal when approaching or passing a side-tracked train if followed by a second train or section. All the train men and the assistant superintendent of the road, who was on the snowplow train, testified that this signal was given to the stalled train at Bartlett. One witness for the plaintiff, who was in the station at Bartlett at the time the snowplow passed, testified that he did not hear such signal, and the plaintiff and his companions testified that they heard no signal and that they could hear the whistle half a mile. The jury also found, in answer to a question, that the locomotive hauling the snowplow did not whistle signals to train No. 6, and that train No. 6 did not answer any such signals. The flying snow prevented the engineer seeing the signal until he had passed it, and he did not stop until after plaintiff was struck by the plow. The trial court charged the jury that, as a matter of law, the maintenance of the rate of speed through the station was not negligence; but that, regardless of whether there were obstructions by smoke or snow or otherwise to the view of the engineer in passing through the yards at the station, it was his duty to sound the whistle of his engine so that persons located about where the plaintiff was when hit, would, under ordinary circumstances, have heard the whistle in time, by the exercise of ordinary diligence, to step from the main track and out of danger. Numerous errors are assigned, but the main contentions are

that the instructions to the jury that it was the duty of the engineer
to sound the whistle was error, and that the evidence shows, as a matter
of law, that plaintiff was guilty of contributory negligence.

SPALDING, J. (after stating the facts as above.)    1. The question
of the negligence of the appellant was for the jury, and the court
erred in instructing the jury that in law it was the duty of the engineer
to sound the whistle while passing through the yards at Bartlett.
The question of negligence is usually one of fact to be determined
by the surrounding circumstances.    It is impossible in many instances
to establish any fixed rule as to when a railroad should sound a whistle
or ring a bell.    The legislature has required this to be done in some
cases, but it does not follow that it should not be done in others be-
cause not exacted by statute.    Gesas v. Oregon Short Line R. Co. 33
Utah, 156, 13 L.R.A.(N.S.) 1074, 93 Pac. 279; Sobieski v. St. Paul
& D. R. Co. 41 Minn. 169, 42 N. W. 863.    Here was a long side track
liable to be occupied by trains, and in fact occupied by a long pas-
senger train headed by two locomotives, and another locomotive fur-
ther west.    A storm had raged resulting in the track being drifted
and the road blockaded.    The evidence shows, and all persons who use
their faculties of observation know, that among the places where snow
collects in piles during a storm to the greatest depth are the rail-
road yards and around station buildings, and men are frequently em-
ployed at such times in clearing the tracks and yards with shovels
and by other means.    On the other hand it was not shown that any
rule required the engineer to sound an alarm, and it appears that no
custom existed to do so.    Bartlett is a very small station, the depot at
the extreme western limit of the village, and the place where the ac-
cident occurred is on the uninhabited prairie, and there were no cross-
ings or buildings west of the station.    The engineer had been informed
at the last station that the track was clear.    He did not know that the
passing track was occupied or that plaintiff or others were on the
track.    It was for the jury to say whether, taking into consideration
the length of the side track, the location of the buildings, the custom,
and all other surrounding conditions and circumstances, ordinary care
required the engineer to signal as a warning to men liable to be so en-
gaged when passing through Bartlett.    The fact that the bell was ob-

structed, putting it out of use, is immaterial. It is shown that the whistle was in commission. We are satisfied that the minds of reasonable men might disagree as to what might constitute reasonable care under such circumstances. The court eliminated the question of signals for the crossing and for the stalled train. Had such signals been given, they would have been given for other purposes, but might have served to warn the respondent of danger. In Sobieski v. St. Paul & D. R. Co. 41 Minn. 169, 42 N. W. 863, it is held that under some circumstances the law implies a duty to give a signal of the movement of an engine, independent of the rules prescribed by the company. In International & G. N. R. Co. v. Hester, 64 Tex. 401, it is held that when a party accepted the employment as section hand, he assumed all the risks ordinarily incident to such employment and that the company would not be liable to him for injuries resulting from such assumed risks, but if the injuries were occasioned by superadded risks resulting from the negligence of the company or its immediate representative, a liability would exist for which he would be entitled to recover, unless in some way or other he contributed to the injury by failure on his part to exercise such reasonable care as the occasion required.

2. The question of the contributory negligence of the respondent is one presenting greater difficulties. It is unquestionably the general rule that the track man or section hand ordinarily assumes the risk from danger incident to his occupation, and that he must protect himself from approaching trains, especially where he is not at the time occupied with duties which require his attention. But there are exceptions to this rule. The question in this case is whether the facts and circumstances disclosed were so unusual as to justify the jury in finding that they relieved the respondent from this assumption of risk, and, consequently, from his duty to keep his own lookout for trains. It is urged that, as a matter of law, he was guilty of contributory negligence. In determining what constitutes ordinary care under any circumstances, the jury is entitled to take into consideration all the surrounding conditions and circumstances, the age, intelligence, and experience of the plaintiff, and, consequently, the information possessed by him upon which he bases his act or failure to act. In the case at bar it may be assumed that he had no right to rely upon

whistles at crossings east of Lakota, which it was doubtful about his ability to hear.  But he saw the block signal.  The block signal was a standing order for all trains to stop at the station and before passing it.  He was told by the night operator, at least we must assume that he was, that no trains were coming.  These were rightful elements entering into the question of his carelessness or lack of ordinary care. They rendered the circumstances unusual, or, as some courts state it, extraordinary or exceptional.  Whether they were sufficient to relieve him from the duty to protect himself, with which he otherwise would have been charged, was a question for the jury under all the circumstances.  It is true that the block signal might have dropped at any instant.  It is likewise true that the night operator was not an agent of the appellant for the purpose of giving such information to the respondent and thereby binding the appellant, but this is not the theory on which evidence of this nature is admissible or on which it should be weighed by the jury.  The court and jury must arrive in some manner at the facts surrounding an act complained of, for the purpose of forming a judgment as to the alleged act of contributory negligence.  The plaintiff in one instance uses his eyesight, in another his hearing; and we see no reason why it was not competent for the jury to consider and weigh the testimony regarding the use by respondent of both these faculties in the instant case.  In the natural course of events about five or six minutes elapsed after he left the depot before the happening of the accident.  While the block signal might have been dropped during this time, the fact of its being displayed was entitled to some weight.  The information given by the operator was likewise for the consideration of the jury.  He was the party ordinarily supposed to have knowledge of the approach of trains, and the evidence shows that he received his information from such sources that the approach of a train between Lakota and Bartlett at that time, without his knowing it, was improbable.  We refer briefly to a number of authorities more or less in point.  In McGhee v. White, 13 C. C. A. 608, 31 U. S. App. 366, 66 Fed. 502, Judge Taft, speaking for the circuit court of appeals of the sixth circuit, held that where a person crossing a railroad track failed to look for a second train after one had passed, when he was about 40 yards from the crossing, the question of his contributory negligence was for the jury,

basing the conclusion of the court upon the ground that the unusual circumstance of a second train following the first at so short a distance and at a high speed served to relieve the injured party from the charge of contributory negligence in law. In Jordan v. Chicago, St. P. M. & O. R. Co. 58 Minn. 8, 49 Am. St. Rep. 485, 59 N. W. 633, it is held that the rule that one is guilty of contributory negligence *per se,* who places himself upon a railway track without looking and listening, is not applied to one employed in a railroad yard and whose duties frequently make it necessary for him to go upon the tracks, and that his failure to look and listen may be negligence or not according to the circumstances, of which the jury are to judge. In Sheridan v. Baltimore & O. R. Co. 101 Md. 50, 60 Atl. 280, it was held that the defendant was liable for an injury inflicted on a person crawling through a train standing upon a track and started without signal or warning, when told by the brakeman that he would have time to cross. That court held that he was not guilty of contributory negligence in law, but that it was a question for the jury. To the same effect see Gesas v. Oregon Short Line R. Co. 33 Utah, 156, 13 L.R.A.(N.S.) 1074, 93 Pac. 279, where it is also held that the duty of a railway company to use reasonable care in the operation of trains applies to all cases where the failure to exercise it may result in injury to others. In that case the brakeman told the injured party that the train would not move for half an hour, and no warning was given, and questions of negligence and contributory negligence were held to be for the jury. See also Elgin, J. & E. R. Co. v. Hoadley, 220 Ill. 462, 77 N. E. 151; Shoner v. Pennsylvania Co. 130 Ind. 170, 28 N. E. 616, 29 N. E. 775. In Scott v. St. Louis, I. M. & S. R. Co. 79 Ark. 137, 116 Am. St. Rep. 67, 95 S. W. 490, 9 A. & E. Ann. Cas. 212, the supreme court of Arkansas held that where it appears that the circumstances were such that an ordinarily prudent person might not have expected a train to pass at that moment, the question of contributory negligence should be submitted to the jury, and that where the circumstances are so unusual that the injured party could not, reasonably, have expected the approach of the train at the time he went upon the track, the question of contributory negligence is for the jury. See the valuable note on the subject of "reasonable belief that no train is approaching as relieving one from the imputation of

negligence *per se* in failing to look and listen," in 9 A. & E. Ann. Cas. 216. To the same effect see Schulz v. Chicago, M. & St. P. R. Co. 57 Minn. 271, 59 N. W. 192.

3. A large number of rulings on the admission of evidence are assigned as error, but the decision of these two questions covers most of them. We shall only briefly refer to a few regarding which doubt may exist.

(a) The respondent was permitted to testify that, while traveling west on the track, he did not feel that there was any danger to be anticipated from the coming of a train. This was followed by his reasons for feeling safe. We think, when taken together, his testimony on this subject may fairly be construed as elicited for the purpose of laying the foundation for showing the information regarding trains, upon which he was acting, and that the question objected to served to introduce the subject, and not primarily to emphasize the mental process or physical sensations of respondent. The form in which the question was put may not have been the most artistic, and the sequence of questions may not have been wholly logical, but we see no reason for concluding that the defense was prejudiced thereby.

(b) Error is assigned because respondent was permitted to testify as to the custom regarding walking on the track. We are disposed to view this as immaterial, but its admission nonprejudicial.

(c) We think it was error to admit evidence showing the rate of speed at which a freight engine had passed through Bartlett on a certain occasion, without showing the rate of speed at which trains were accustomed to pass that station when not stopping. The speed of one engine on a single occasion would not furnish any criterion by which to determine whether the speed of the snowplow was excessive, even if that question were involved, and we think it was not.

(d) Evidence regarding the ability of witnesses to hear the whistle of an engine while working on the yard was improperly admitted, for the reasons that the conditions were not shown to be similar, but we think this was cured by the instructions.

The respondent states in his brief that on the motion for judgment notwithstanding the verdict or for a new trial, the motion for a new trial was abandoned, and that the appellant relied solely upon the motion for judgment. The record, however, fails to disclose this to be the fact, and the appeal was argued by the appellant on both proposi-

tions. Under the circumstances, we do not feel at liberty to ignore the motion for a new trial, whatever may have been the fact relative to its presentation to the trial court.

We think it unnecessary to pass specifically upon other questions, as they are sufficiently covered by our conclusions on the principal assignments or of the court's instructions, or are without merit.

Because of the error in instructing the jury referred to in paragraph 1, the order of the District Court denying a new trial is reversed and a new trial granted. All concur.