(100 N. W. 248.)

---

P. H. WEST v. THE NORTHERN PACIFIC RAILWAY COMPANY.

Opinion filed June 14, 1904.

**Failure of Duty on Part of a Railway Company Does Not Excuse the' Plaintiff's Negligence.**

1. Failure to give the statutory signals, and running the train at too rapid a rate of speed, does not excuse negligence on the part of one in charge of a team killed at a railroad crossing.

**Railroad Crossing — Contributory Negligence.**

> 2.  Plaintiff's servant approached a railroad crossing with which he was familiar, with his horses on a trot, knowing that a train was approaching at a high rate of speed and very near to the crossing, and that a view of the train was obstructed by buildings and cars from a point 127 feet back from the track until he arrived within eight feet thereof. But for the noise of his wagon, he could have heard the train in time to have avoided a collision with it. Under these circumstances he was guilty of negligence, preventing a recovery, first, for attempting to drive in front of a rapidly moving train in close proximity to the crossing, whereby his team was struck and killed by the cars; and, second, for not stopping and thus quieting the noise of his own vehicle, and thereby enabling himself to hear the train before getting upon the track in front of it.

Appeal from District Court, Eddy county; *Glaspell, J.*

Action by P. H. West against the Northern Pacific Railway Company. Judgment for plaintiff. Defendant brings error.

Reversed.

*C. J. Maddux, M. Conklin,* and *Ball, Watson & Maclay,* for appellant.

Where the driver of mature years, accustomed to driving horses who had lived and worked near the crossing where the accident occurred, and was familiar with it for a period of six months prior to such accident; had actual notice of the approaching train, saw it coming, estimated its distance and the time it would require him to pass over the crossing as compared with the time which he thought it would take the train to do so; went into the house after he saw it coming and thought he had ample time to get over the crossing before it arrived; and who knew his view was obstructed by buildings and other structures, but nevertheless drove his team in a trot until his horses were on the main line of the road, and looked and listened for the train, knew it had not yet passed over the crossing, and if not visible must be very close; and who did not stop the team anywhere to look or listen but trotted clear down and upon the track, and who would have heard the train but for the unusual noise made by his lumber wagon, and whose horses were quiet and tractable, and at all times under his control; and who was depending upon the sound of the whistle or ringing of the bell, to warn him of the train's near approach, and his attention not being distracted by any other occurence, in the face of all this to say the plaintiff is

entitled to recover, is to fly in the face of reason and disregard all well settled principles of law.

The defendant, as a matter of law, was guilty of no negligence. If a traveler upon a highway has notice of the train's approach otherwise than by ringing of the bell or the sounding of the whistle, in season to avoid a collision upon the crossing, the object of the whistle, and bell has been subserved, and failure to sound them is not the cause of the traveler's injury. Railroad v. Bell, 70 Ills. 102; McManamee v. Railway, 37 S. W. 119; McDonald, v. Railroad, 22 S. W. 942; Baker v. Receivers, etc., 30 N. J. E. 240; Chicago, Rock Island & Pac. Ry. Co., v. Houston 95 U. S. 702, 24 Sup. Ct. Rep. 542; Burnet v. Railroad, 39 Atl. 663; Helm v. Railroad, 33 S. W. 396.

Nor, in view of the driver's knowledge of the team's approach, was its unusual speed a matter of negligence. Korrady v. Lake Shore & M. S. Ry. Co. 29 N. E. 1069; Pepper v. Southern Pac. Ry. Co. 38 Pac. 974; Kelly v. Railroad, 75 Mo. 138; Taylor v. Railroad, 86 Mo. 457; Pyle v. Clark, 79 Fed. 744; State v. Maine Cent. R. Co. 1 Atl. 673; Chicago, R. I. & P. R. Co. v. Crisman, 34 Pac. 286.

It was the duty of the driver, who knew that the train was approaching and had not yet passed the crossing, to stop and listen, or if not to stop, at least to bring his horses to a walk before entering upon the track. It was negligence to drive them upon a trot to a point where, upon seeing the train, he could not possibly avoid a collision. Elliot on Railroads, section 1167; Houghton v. Chicago & G. T. Ry. Co., 58 N. W. 314; Brady v. Toledo, Ann Arbor & N. M. R. Co., 45 N. W. 1110; Shatto v. Railroad, 121, Fed. 678.

The presence of buildings and structures intercepting the driver's view, when coupled with his knowledge of the approaching train, rendered it imperative that he stop and listen before going upon the track. The greater the danger the greater the precaution required. Seefeld v. Chicago, M. & St. P. Ry. Co., 35 N. W. 278; Brady v. Toledo, Ann Arbor & N. M. R. Co. supra; Barnhill v. Railway, 33 So. 63; Day v. Railroad, 52 Atl. 771; Railway v. Holden, 49 Atl. 625; Hook v. Railway, 63 S. W. 360; Chase v. Maine Cent. R. R., 45 N. E. 911; Carter v. Railway, 47 Atl. 797.

Travelers are bound to make vigilant use of both senses of sight and hearing; and when the driver's failure to hear an approaching train was due to the unusual noise of his own vehicle, he thereby directly contributed to his injury. Carter v. Railway, 47 Atl. 797;

Chase v. Maine Cent. R. Co., 5 Atl. 771; Allen v. Maine Cent. R. Co., 19 Atl. 105.

*P. M. Matson,* and *S. E. Ellsworth,* for respondents.

A motion for judgment notwithstanding the verdict must be made before judgment is entered on the verdict. Scheible v. Hart, 12 S. W. 628; 11 Enc. of Pl. & Pr. 920.

Appellant did not move the District Court, at the close of the testimony, to direct a verdict in its favor. Such motion at such time is a necessary preliminary to a motion for judgment notwithstanding the verdict. Session Laws 1901, Chap. 63, page 74; Hemstad v. Hall, 66 N. W. 366; Sayer v. Harris Produce Co., 87 N. W. 617; Johns v. Ruff, 12 N. D. 74, 95 N. W. 440.

When a motion for a new trial is addressed to the sound judicial discretion of the trial court and an order made thereon based upon such ground will not be reversed by the Appellate Court, unless the record discloses a case of abuse of discretion. Gull River Lumber Co. v. Osborne-McMillan Elevator Co., 6 N. D. 276, 69 N. W. 691; Pengilly v. J. I. Case Thresher Co., 11 N. D. 249, 91 N. W. 63; O'Conor v. Clark, 44 Pac. 482; 14 Enc. of Pl. & Pr. 982 and cases under note 2.

A verdict can only be directed when the undisputed evidence, giving the construction most favorable to the party directed against that it will bear, and after allowing him the benefit of all reasonable inferences arising in his favor, will not sustain a verdict in his favor. Pirie, Carson et al. v. Gillett, 2 N. D. 255, 50 N. W. 710.

It was the duty of the court to submit the case to a jury, unless upon the trial the evidence of respondent's contributory negligence was so clear and convincing that all reasonable minds could draw but one conclusion therefrom. Struck v. Chicago, M. & St. P. Ry. Co., 59 N. W. 1022; Bronson v. Oakes, 76 Fed. 734; N. P. Ry. Co., v. Austin, 64 Fed. 211; Chicago, etc. Ry. Co., v. Netolicky, 67 Fed. 665.

Respondent was warranted in assuming that the signals and warning required by law would be given. Vandewater v. N. Y. etc. R. Co., 26 N. Y. S. 397; 8 Am. & Eng. Enc. of Law (2d Ed.) 407.

In view of the obstructed condition of the crossing, respondent might assume that greater care than ordinary in approaching would be observed, and trains would not be run at a high and unusual

rate of speed.   Beanstrom v. Northern Pacific. R. Co., 48 N. W. 778; Thomas v. Delaware, etc. Ry. Co., 8 Fed. 729.

Where the use of either the sense of sight or hearing would be unavailing, even its non-use may be excused.   Terre Haute & I. R. Co., v. Voelker, 22 N. E. 20.

The rule that a traveler before going upon a railroad track must 'look and listen, and that failure to do so is negligence per se, has been refused recognition by the Federal Courts and by the courts of almost all the states.   St. Louis & Ry. Co. v. Barker, 77 Fed. 810; Peck v. Oregon Short Line Ry. Co., 69 Pac. 153; Grand Trunk Ry. Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. Rep. 679; 7 Am. & Eng. Enc. of Law (2d Ed.) 433.

If a traveler approaching a crossing takes every reasonable precaution a prudent man would observe to avoid injury from passing trains, he has done all that can be required of him, and whether his conduct, under all the circumstances shows ordinary care is generally a question for the jury under proper instructions.   Cobleigh v. Ry. Co., 75 Fed. 247; Beanstrom v. N. P. Ry. Co., supra; St. Louis, etc. Ry. Co. v. Barker, 77 Fed. 810; Northern Pacific Ry. Co. v. Austin, 64 Fed. 211; Selensky v. Chicago, Great Western, 94 N. W. 272; 7 Am. & Eng. Enc. of Law (2d Ed.) 434.

The speed of his horses together with other circumstances of his conduct, should be left to the consideration of the jury. Atchison, Topeka & S. F. R. Co., v. Shaw, 43 Pac. 1129; Moore v. Chicago, St. P. & K. C. Ry. Co., 71 N. W. 569; Hicks v. N. Y., N. H. & H. R. Co., 41 N. E. 721; Selensky v. Chicago, Great Western Ry. Co., 94 N. W. 272; Chicago & I. R. Co., v. Lane, 22 N. E. 513; Northern Pacific R. Co. v. Austin, 64 Fed. 211; Chicago, etc. Ry. Co. v. Netolicky, 67 Fed. 665.

A prudent man in the exercise of ordinary care may keep moving towards a railroad track with his vehicle making a certain amount of noise.   St. Louis, etc. Ry. Co. v. Barker, 77 Fed. 810; Chicago, etc. Ry. Co. v. Netolicky, 67 Fed. 665; Beanstrom v. N. P. Ry. Co., 48 N. W. 778.

COCHRANE, J.   Defendant appeals from an order denying its motion for judgment notwithstanding the verdict, or for a new trial.   The plaintiff recovered the value of a team killed at a railroad crossing.   The point for consideration is whether or not, under the evidence, plaintiff's driver was guilty of negligence proximately causing the injury, or of contributory negligence as a matter of law.

The accident occurred on Lamborn avenue, in New Rockford, where the appellant's main track crosses such street at right angles. Lamborn avenue runs east and west, the railroad north and south. There is a side track on the west side of, parallel with, and distant eight feet from the main line track. On the west side of this side track, and north of Lamborn avenue are certain elevators and structures extending for several hundred feet along the side track. The east line of such structures is 8 feet from the center of the side track, and 30 feet 8 inches from the center of the main track. These structures varied in height, and, with cars on the side track near the elevators, obstructed the view of the track to the north, on the part of one approaching from the west on Lamborn avenue, until within eight feet of the track. Chicago avenue runs north and south, west of and parallel with the railroad. It is 127 feet from the west side of Chicago avenue to the center of the main line track, and 1,380 from Lamborn avenue north to the water tank.

From the west side of Chicago avenue a train could be seen if north of the water tank.

Frank Haas, the driver of this team, lived in New Rockford, and had been employed as a driver upon a dray for several months prior to the accident. He was familiar with the crossing on Lamborn avenue and the conditions above described. On the evening of the accident, October 8, 1902, between 6 and 6:30 o'clock p. m., but before dark; Haas was in front of plaintiff's house, one block west of the railroad tracks on Lamborn avenue. He saw a train approaching on the main track, about 1½ miles north. He went into the house, stopped there not over a minute, came out to the street, where his team was standing, turned it around, and started east toward the track. He drove the team on a trot clear down and onto the track. When he crossed the west side of Chicago avenue he looked north, but did not see the train. If it had been north of the water tank he could have seen it. He knew when he could not see it that it was very close to the crossing; knew it had not passed the crossing; knew it was approaching; but thought, from where he had first seen the train, he had time to get over the crossing, and so did not slacken the horses' speed at all until they struck the track. As he was driving, he looked and listened for the train. The wagon he was driving was an ordinary lumber wagon. It made some noise. Haas testified: "I could have heard the train if I had not been

making an unnusual noise myself." He saw the train when 50 or 60 feet from him, and when his horses were on the track he tried to back them off, but the team was struck by the engine and killed.

The negligence of defendant is alleged to have consisted in its running the train into the town and across this street at a high rate of speed, without sounding the whistle or ringing the bell. There is a conflict in the evidence both as to the speed of the train in approaching the crossing and as to the warnings given. There was evidence in the case that the train approached the crossing at a speed of 30 miles an hour, and that the whistle was not sounded or bell rung within 80 rods of the crossing. For the purposes of this decision, the evidence will be considered in its most favorable aspect toward plaintiff. Haas testified that if the trainmen had rung the bell or blown the whistle within 80 rods of the crossing, or if the bell had been rung continuously within a block of the crossing, or if the train had been going at the rate of speed that trains usually run through the town, he could have avoided the accident; that he was depending upon the sound of the whistle or the bell to warn him of its approach. It is plain that Haas was guilty of gross negligence, and that his negligence was the direct cause of the accident, and that the negligence of the appellant's trainmen in the particulars mentioned could furnish no excuse or justification for the reckless act of Haas in attempting to cross in front of the approaching train. From the time Haas crossed the Chicago avenue until he reached the track he knew all view of the train would be obtsructed, and that he could not guage its exact distance through the sense of sight, but must rely upon the sense of hearing alone. When 127 feet from the crossing, with his mind and attention fixed upon the fact that the train was approaching; with ocular proof that it had traveled from a point 1½ miles north to a point less than 1,380 feet from the crossing since he had first seen it, less than 3 minutes before, and if the rate of speed was maintained it would be on the street ahead of him in less than 1 minute; with knowledge that he could not see the train again until it emerged from behind the buildings and appeared at the crossing toward which both the train and his team were hurrying; that a stop of a minute at most would let it pass; with full knowledge of the danger of attempting to drive across in front of a train approaching at such a rapid speed, and dangerously near— he took no precautions for his safety, but hastened on as if in a race to see which could first pass the point of intersection.

The trains were not accustomed to stop at the crossing. He knew this, because he relied upon the bell or whistle to warn him when the train would get to the crossing. The erections which obstructed his view of the train also prevented the train crew seeing him. It was impossible, and he knew it would be impossible, for the train crew to see him on the crossing in time to stop the train and avoid a collision. As between himself and the train, the train was entitled to precedence and the right of way, because, from the very nature of the business, the character and momentum of a railroad train, and the requirements of public traffic by means thereof, it cannot be expected that it shall stop and give precedence to an approaching wagon to make the crossing first. It is the duty of the wagon to wait for the train. Continental Improvement Co. v, Stead, 95 U. S. 161, 24 L. Ed. 405; Gahagan v. Ry. Co., (N. H.) 50 Atl. 146, 55 L. R. A. 434. Haas voluntarily and unnecessarily put himself and team in a place of known danger on the track in front of the train, and by so doing took the risk of accident. The consequent injury was directly attributable to his want of ordinary care, and not to the negligence of the railway company. The object of requiring the whistle to sound or the bell to ring 80 rods before reaching a crossing, and thereafter until the crossing is passed (section 2976, Rev. Codes 1899), is to notify the traveler so that he can look out for his safety, and allow the train to pass the crossing before he exposes himself to danger by a possible collision. Warner v. Ry. Co., 44 N. Y. 470.

When, as in the case at bar, the person in charge of a team had actual knowledge of the train's approach in ample time to have permitted the train to pass, and knew, without sound of bell or whistle, all that he could have known had the alarm been sounded, it cannot be said that the failure to ring the bell or sound the whistle was the cause of the accident. Burnett v. Ry. Co. (N. J. Sup.) 39 Atl. 663; Chicago, etc., Ry. Co. v. Bell, 70 Ill. 102; Pakalinsky v. Ry. Co., 82 N. Y. 424; Chicago, etc., Ry. Co. v. Houston, 95 U. S. 702, 24 L. Ed. 542; Blake v. Receiver, 30 N. J. Eq. 243; Helm v. Ry. Co. (Ky.) 33 S. W. 396; Bertelson v. Ry. Co., 5 Dak. 313, 40 N. W. 531; State v. Ry. Co., 76 Me. 357, 49 Am. Rep. 622; McDonald v. Ry. Co. (Tex. Sup.) 22 S. W. 942, 40 Am. St. Rep. 803; McManamee v. Ry. Co. (Mo.) 37 S. W. 119; Fletcher v. Ry. Co., 64 Mo. 484. In Burnett v. Ry. Co. (N. J. Sup.) 39 Atl. 663, it is said: "Irrespective of the question of negligence in attempting

to cross a railroad track in front of a train known to be near at hand, the very moment it appears that the person injured had knowledge that the train approaching the crossing, the nonliability of the railroad company for the injury is established. The only ground upon which it can be held responsible is that it failed in the discharge of the duty which it owed to the person injured, namely, the giving him timely warning of the approach of its train, and that, by its failure, it caused the accident which produced the injury. But if the injured person discovers for himself what the railroad company should have informed him of—that its train was approaching the crossing—it is quite clear that the negligence of the company in failing to warn him had no part in the bringing about of the accident." In Chicago, etc., Ry. Co. v. Houston, 95 U. S. 702, 24 L. Ed. 543, it is said: "The failure of the engineer to sound the whistle or ring the bell, if such were the fact, did not relieve the deceased from the necessity of taking ordinary precautions for her safety. Negligence of the company's employes in these particulars was no excuse for negligence on her part. She was bound to listen and to look, before attempting to cross the railroad track, in order to avoid an approaching train, and not to walk carelessly into the place of possible danger. Had she used her senses, she could not have failed both to hear and to see the train which was coming. If she omitted to use them, and walked thoughtlessly upon the track, she was guilty of culpable negligence, and so far contributed to her injuries as to deprive her of any right to complain of others. If, using them, she saw the train coming and yet undertook to cross the track, instead of waiting for the train to pass, and was injured, the consequences of her mistake and temerity cannot be cast upon the company. No railroad company can be held liable for a failure of experiments of that kind. If one chooses, in such a position, to take risks, he must bear the possible consequences of failure."

It is urged that respondent had a right to depend upon the trainmen performing their statutory duty, and that, if the bell had rung or whistle sounded continuously as the train approached the crossing, he could have measured its exact location by the sound, and so stopped before getting onto the track; that it was properly a question for the jury whether he was in the exercise of ordinary care under the circumstances. He had actual knowledge, when he crossed Chicago avenue, that the train was within less than 80 rods of the crossing, and that it had not sounded the whistle or bell,

and, as he covering the intervening 127 feet, he had every reason to believe the train was moving at ten times the speed of his team and every second drawing nearer the point of danger, that it was not sounding the bell or whistle, and that he could not, therefore, rely upon these warnings.   The ordinary precaution required of one approaching a railroad crossing, when he has no knowledge of the close proximity of the train, is that he look and listen and make a diligent use of all his faculties to inform himself and avoid collision.  . Where a view of the track in either direction is obstructed before reaching the point of danger, extra precaution is required to ascertain danger through the sense of hearing.   When the exercise of these ordinary precautions would have avoided the accident, negligence is conclusively established.   Haas' rapid driving and the noise of his wagon prevented his hearing the rumbling of the train—the only means he had of measuring its exact distance.   Had he stopped and listened, he would have heard the train.   It was his duty to stop and listen, under the circumstances, before venturing onto the track.   His failure to do so was negligence as a matter of law.   Haines v. Ry. Co., 41 Iowa, 228; Ry. Co. v. Hunter, 33 Ind. 364, 5 Am. Rep. 201; Ernst v. Ry. Co., 39 N. Y. 58, 100 Am. Dec. 405; Baxter v. Ry. Co., 41 N. Y. 502; Salter v. Ry. Co., 75 N. Y. 273; Lake Shore, etc., Ry. Co. v. Miller, 25 Mich. 274; Pyle v. Clark, 79 Fed. 745, 25 C. C. A. 190; Pakalinsky v. Ry. Co., 82 N. Y. 424.

If the failure of the engineer to continuously ring the bell was negligence as to Haas, and in any way contributed to the accident, the case falls within the rule:   "Where both parties are guilty of negligence, and the injury is due to the negligence of both, no recovery can be had."   Nashua Iron & Steel Co. v. Ry. Co., 62 N. H. 159; Gahagan v. Ry. Co. (N. H.) 50 Atl. 146, 55 L. R. A. 434; Holland v. Ry. Co. (C. C.) 18 Fed. 243; Fletcher v. Ry. Co., 64 Mo. 484; Gorton v. Ry. Co., 45 N. Y. 662; Lake Shore, etc., Ry. Co., v. Miller, 25 Mich. 274.   In Haas v. Ry. Co., 47 Mich. 407, 11 N. W. 219; it was said: "To move forward briskly, as the decedent did, from a point whence an approaching train would not be seen, at a time when it was known by him that a train was due, and not to pause until the train was encountered, was so far from being ordinary prudence that it approached more nearly to absolute recklessness."   In Schaefert v. Ry. Co., 62 Iowa, 624, 17 N. W. 893, similar to this case upon the facts, the team was trotted onto the track where the accident occurred.   It was there

said: "Under the circumstances stated, ordinary care required that the deceased should have stopped and listened at some place before reaching the track. There was nothing to prevent his doing so, and nothing to distract his attention." In Chicago, etc., Ry. Co. v. Crisman, 19 Colo. 30, 34 Pac. 286, it is said: "Where one approaching a railroad crossing neglects to avail himself of every opportunity to look and listen, and carelessly ventures upon the track and is injured, such conduct is of itself sufficient to defeat a recovery." In Merkle v. Ry. Co., 49 N. J. Law, 473, 9 Atl. 680, a person drove a wagon loaded with boxes and empty bottles across a railroad track at a point where it was impossible to perceive an approaching train till within six or eight feet of the track. The noise of the bottles prevented his hearing the noise of the train. The court said: "Inasmuch as he could not see an approaching train at any considerable distance from the track, ordinary prudence required him to stop when he was near enough to the railroad to ascertain, at least by listening, whether there was any danger or not." To the same effect is Keyley v. Ry. Co. N. J. (Err. & App.) 45 Atl. 811. Judge Thompson, in his work on Negligence, vol. 2, section 1670, says: "As to the duty of one approaching a crossing, if his view alone is obstructed, the exercise of ordinary prudence will plainly require him to stop so that the noise of his vehicle will not prevent him from hearing any train that may be approaching." In the aspect of the evidence most favorable to plaintiff, he should have been nonsuited.

Defendant moved the court for judgment notwithstanding the verdict, or for a new trial. The particular ground upon which it demanded a new trial was the insufficiency of the evidence to sustain the verdict. The motion for judgment notwithstanding the verdict was properly overruled. At the close of the testimony defendant's counsel did not move for a directed verdict. Ward v. McQueen (just decided) 100 N. W. 253. Such motion is a necessary preliminary to a motion for judgment notwithstanding the verdict. Chapter 63, p. 74, Laws 1901; Johns v. Ruff, 12 N. D. 74, 95 N. W. 440. But the motion for new trial was improperly overruled. The verdict is contrary to and is not supported by the evidence.

The order appealed from, in so far as it denied defendant's motion for a new trial, is reversed, and a new trial ordered. All concur.