# SHERLOCK v. MINNEAPOLIS, ST. PAUL, & SAULT STE. MARIE RAILWAY COMPANY.

### (138 N. W. 976.)

**Injury at railroad crossing — contributory negligence.**

1. A driver about to cross a railroad track at a public crossing in the country is charged with knowledge that such crossing is a dangerous place, and that it cannot be assumed that cars are not approaching from either direction. He is bound to assume that cars are coming until satisfied by direct evidence to the contrary, and to this end must vigilantly use his senses of sight and hearing and do all that ordinary care and prudence would dictate, having in view the surrounding circumstances, to avoid injury, regardless of whether any signal is given by an approaching train.

---

Note.—On the question of the effect of continuing negligence of person injured on liability of railroad company, see note in 55 L.R.A. 418. And upon the duty as to place and direction of observation, see note in 37 L.R.A.(N.S.) 136. And for failure to give customary signals as excusing nonperformance of duty to look and listen, see note in 3 L.R.A.(N.S.) 391. And as to the care and precautions necessary in crossing a railroad track, generally, see notes in 24 L. ed. U. S. 403 and 51 Am. Rep. 360.

Upon the right to rely on presumption of self-preservation in action for negligent killing at railroad crossing in order to prevent nonsuit where there were no eyewitnesses to the killing, see note in 11 L.R.A.(N.S.) 844. And as to the presumption of care of person killed at crossing, see notes in 16 L.R.A. 261; 4 L.R.A. (N.S.) 344; and 116 Am. St. Rep. 125.

**Injury at railroad crossing — duty to look and listen.**

2. Where the exercise of ordinary precautions of looking and listening and making an intelligent use of one's faculties to inform himself as to the approach of a train is neglected, and when the taking of such precautions would have avoided an accident, negligence is conclusively established, in the absence of conflict in the evidence on these subjects.

**Concurrent negligence.**

Where an injury is due to the negligence of both parties no recovery can be had.

**Injury at railroad crossing — measure of care.**

4. The greater the danger, by reason of weather conditions rendering it difficult to see a train or hear its approach, the greater the caution necessary to constitute ordinary care.

**Contributory negligence — presumption from law of self-preservation.**

5. The law of self-preservation may usually be considered in favor of the plaintiff, where doubt exists as to his ability to see or hear an approaching train; but when no such doubt appears, and it is clear that had he looked and listened he could have seen such train, and the evidence shows that he was not in the exercise of ordinary care, no inference arising from the instinct of self-preservation is applicable in his favor.

**Care at railroad crossing — duty to look and listen.**

6. While there may be exceptional circumstances excusing a party from the observance of the rule regarding looking and listening, it is *held*, that the facts of this case disclose no such circumstances.

**Care at railroad crossing — duty to look and listen.**

7. It is the traveler's duty to look in both directions, at a crossing, for trains; and this rule is emphasized where there are two tracks which render it possible for trains to approach from either direction or pass each other at the crossing.

**Duty to look and listen at railroad crossing — diversion of attention.**

8. The only diversion of attention excusing failure to look and listen at a railroad crossing is where the attention is so irresistibly forced to something else as to practically deprive a traveler of the opportunity to look and listen.

**Appeal — harmless error in exclusion of evidence.**

9. The exclusion of evidence of witnesses as to the possibility of their hearing the signals of the train, if any were given, just prior to the accident, was nonprejudicial, when it was the duty of the deceased to look and listen regardless of signals.

**Evidence — photographs.**

10. While great care should be exercised in receiving photographic exhibits showing elevations, they may be received when properly verified and it is clear that conditions were the same when taken as when an accident occurred.

**Evidence — photographs.**

11. Plaintiff's husband was killed at a railway crossing, December 14, 1906. Photographic exhibits offered in evidence were taken the following June. The record discloses that the conditions were the same as when the accident occurred, except as to snow, and the removal of one building on the side of the highway not necessary to consider in relation to the issues. *Held*, that the difference in conditions, under the circumstances disclosed, was immaterial.

**Injury at railroad crossing — contributory negligence.**

12. Plaintiff's husband was driving a team and grain tank north on a highway toward a railroad crossing, at a slow walk, and was killed by a train on the crossing approaching from the east at from 8 to 10 miles per hour. The view from the highway for at least 1,700 feet south of the crossing of the railway toward the east was unobstructed except by two houses on the east side of the highway. It was 277 feet from the most northerly house to the crossing. For that distance the view was quite unobstructed. The deceased, while passing at least between the house and the crossing, looked steadily toward the northwest. He wore a fur coat with a collar turned over his ears. The wind was from the northwest. He made no effort, at least during that distance, to ascertain the approach of any train from the east. *Held*, that, assuming that no signal was given by the train, he was guilty of contributory negligence, and not exercising his senses of seeing and hearing, precluding a recovery for his death.

Opinion filed November 20, 1912.

Appeal by plaintiff from a judgment of the District Court for Barnes County, *Burke,* J., dismissing the complaint in an action brought to recover damages for the death of plaintiff's intestate.

Affirmed.

Statement by SPALDING, Ch. J. This appeal was taken from a judgment of the district court of Barnes county in favor of the defendant, and from an order denying new trial. The action was for damages for causing the death of Thomas Sherlock at defendant's crossing, and the defense was contributory negligence of said Sherlock. At the close of the case the court, on motion, directed a verdict in favor of the defendant. The facts disclosed are about as follows:

The deceased, Thomas Sherlock, was the husband of Mary Sherlock, plaintiff. He was employed by a milling company in Valley City as a teamster. December 14, 1906, while in such employment he was en-

gaged in hauling wheat from the elevator in North Valley City to the mill of his employer in Valley City, and while driving a tank wagon north was hit by a train from the east, consisting of a snow plow, engine, and caboose, moving from 8 to 10 miles per hour. The elevator and mill were somewhat over a mile apart. He had been engaged in this occupation for some days, and was thoroughly familiar with the road leading between the two points, and with the crossing over the railroad track where he was killed. He was in the entire possession of his faculties. In making his trips he passed along a public highway, north from the city of Valley City to the elevator at North Valley City, which elevator was on the north side of defendant's railroad track, which, at the point of crossing, consisted of its main line and side or passing track. The road over which he traveled crossed the Sheyenne river, 1,700 feet south of the railroad crossing, and was graded up a foot or more above the level of the prairie; and there was snow upon the road 1 foot or over deep.

Defendant's line runs, at the point of crossing, a little south of east, and the crossing is nearly at right angles. This railroad is visible from the road, over which the deceased traveled, a mile or farther in an easterly direction, and can be seen from the highway at least all the distance from the Sheyenne river crossing, to the highway crossing where the accident occurred, except for two houses situated on the east side of the highway and facing west, and possibly a shack or barn close to the track, but which, on account of being low posted and setting below the track, either did not obstruct the view or obstructed it to so slight an extent as to be immaterial. The grade of the railroad track for practically the entire distance visible from the highway was considerably elevated above the surrounding prairie.

It was 277.8 feet from the track to the north line of the north house, to which reference has been made, and the distance between that and the other house 14.75 feet. The north house had a front toward the highway of 18.25 feet, north and south, and was 24.23 feet in depth, east and west, and the more southerly house was 25.25 feet by 24.5 feet. The north house was a story and a half, and the south one one story, high. The barn, nearer the track, was a little over 20 feet in length, east and west, and about 12.25 feet north and south. The total height of the building was 10.3 feet. It stood 94 feet south of

the center of the main track, and the ground on which it stood was considerably lower than the track.

The depot building at North Valley City is 649.46 feet nearly west of the crossing. The deceased was standing up in the wagon and had on a fur coat with collar turned up over his ears. His back, according to the uncontradicted evidence, was turned toward the east, and he appeared to be watching the depot, or a train standing near and west of the depot, apparently taking water or fuel. The day was cold, with considerable wind from the northwest and some snow blowing, and perhaps falling, but the amount of snow and storm was not sufficient to prevent a fairly clear view of the track to the east. He was seen and watched by several witnesses during more or less of the time from his passing the houses until he reached the place of the accident. One Weimer, who resided in the north house, testified that he was out of doors when the accident occurred, and saw the deceased pass his house and drive toward the track, and saw the accident; that his team was going at a slow walk, and he did not try to hurry them when he reached the track; that the deceased could see down the track for a considerable distance but that he was looking toward the depot.

A daughter of this witness also testified to seeing deceased coming, and witnessing the accident; that she first saw Sherlock when opposite the north house; that he was looking toward the depot, and continued to took toward the depot, and did not turn toward the east; that where she was on the ground she could see east a quarter of a mile; that the little barn might have obstructed the view a little ways; that she could see the railroad bridge a quarter of a mile east; that deceased was not looking toward the incoming train, but kept his head towards the west; that his team was walking.

One Kuester testified that at the time of the accident he was in the house farthest south; that he saw Sherlock driving past; that when he went past he was standing up, looking toward the depot. He saw the accident plainly. He did not see Sherlock all the time between his house and the track.

One Briggs testified that he was near the depot when the accident occurred; that he saw Sherlock about 200 feet before he got to the railroad track; that he was looking northwest; that he last saw deceased right close to the crossing; and that he was still looking west, and the

train just a few feet from him; that he seemed to be looking toward the depot all the time; that he first saw the train coming three quarters of a mile east, and could see it clearly and plainly as it continued up to the crossing; that the barn to which reference has been made did not obstruct the view between the highway and the railroad for anyone driving along; that cars were visible over the top of it; that the snow was blowing some but not enough to obstruct the vision; that he could see clearly and plainly.

There is a conflict in the evidence as to whether the whistle was blown or bell rung. Photographs taken the 13th of June, 1907, were received in evidence. The photographer testified that he had been engaged in the business for more than twenty years; that the writing on the back of the photographs were notations made and measurements taken by him when he made the photographs; that they were correct, and represented the location of his camera and the direction in which it was pointed; that he had been familiar with the location of North Valley City since it started; that he was familiar with the buildings in question on the 14th of December, 1906; also with the changes which had been made between that time and the time of the photographs; that everything remained in the same condition as when the accident occurred, except the snow had disappeared and a building on the west side of the highway had been removed.

In Exhibit No. 1 the camera was placed 50 feet south from the main line of the railroad, in the center of the road, and pointed west. It shows an unobstructed view between the depot, where the witness Briggs was at the time of the accident, and the highway to the crossing.

In Exhibit No. 2 the camera was placed in the same position but pointing easterly, and shows an unobstructed view of the track toward the east from this point until the railroad strikes the hills to the southeast, which is a mile or more.

Exhibit No. 3 is a photograph taken looking easterly, with the camera placed in the center of the road, 290 feet south of the main track, it showing between the two houses referred to. It shows an unobstructed view of the track for a short distance, looking between the two houses.

Exhibit No. 4 shows the track looking easterly from a point in the road 100 feet south of the main line, and the view includes the barn

to which reference has been made. It shows the view at this point of the track unobstructed until it reaches the hills, and also shows to some extent the elevation of the track above the surrounding ground and the barn.

Exhibit No. 6 was taken in the center of the road, 230 feet south from the main line, looking east, and also shows an unobstructed view of the track, east to the point where it enters the hills, except that it indicates that the barn, if the deceased was no higher from the ground than the camera, would partially obstruct the view of the track for a few feet,— the length of two or three cars.

Exhibit No. 8 shows an unobstructed view of the track for a long distance, from a point in the road 25 feet south of the main line, looking east.

There was no conflict in the evidence except as to the engineer giving a signal, and as to the extent to which the storm and snow obstructed the vision, but no witness testified that the conditions were such as to obscure the sight of the train for less than half a mile. One witness testified that he watched the train coming three quarters of a mile.

Errors are assigned on the direction of the verdict for defendant, and upon various rulings on the admission and rejection of evidence. Sufficient reference will be made to these later as considered.

*M. A. Hildreth,* for appellant.

This case should have been submitted to the jury, and it was error to direct a verdict for the defendant. Pendroy v. Great Northern R. Co. 17 N. D. 433, 117 N. W. 531; Coulter v. Great Northern R. Co. 5 N. D. 568, 67 N. W. 1046; Cameron v. Great Northern R. Co. 8 N. D. 124, 77 N. W. 1016, 5 Am. Neg. Rep. 454; Kunkel v. Minneapolis, St. P. & S. Ste. M. R. Co. 18 N. D. 367, 121 N. W. 830; Hollinshead v. Minneapolis, St. P. & S. Ste. M. R. Co. 20 N. D. 642, 127 N. W. 993; Washington & G. R. Co. v. McDade, 135 U. S. 554–571, 34 L. ed. 235–241, 10 Sup. Ct. Rep. 1044; Grand Trunk R. Co. v. Ives, 144 U. S. 408, 36 L. ed. 485, 12 Sup. Ct. Rep. 679; Texas & P. R. Co. v. Cox, 145 U. S. 593, 36 L. ed. 829, 12 Sup. Ct. Rep. 905; Gardner v. Michigan C. R. Co. 150 U. S. 349, 37 L. ed. 1107, 14 Sup. Ct. Rep. 140; Goodwin v. Central R. Co. 73 N. J. L. 576, 64 Atl. 134,

20 Am. Neg. Rep. 433; Martin v. Southern P. R. Co. 150 Cal. 128, 88 Pac. 701.

Deceased was not guilty of contributory negligence as a matter of law. Atchison, T. & S. F. R. Co. v. McClurg, 8 C. C. A. 322, 19 U. S. App. 346, 59 Fed. 860; Ramsey v. Louisville, C. & L. R. Co. 89 Ky. 99, 20 S. W. 162; Baltimore & O. R. Co. v. Griffith, 159 U. S. 603, 40 L. ed. 274, 16 Sup. Ct. Rep. 105; Strong v. Sacramento & P. R. Co. 61 Cal. 329, 11 Am. Neg. Cas. 196; Goodenough v. Pennsylvania R. Co. 55 N. J. L. 596, 27 Atl. 931; Chicago, B. & Q. R. Co. v. Lee, 87 Ill. 454.

*Lee Combs* and *L. S. B. Ritchie* (*A. H. Bright,* of counsel), for respondent.

Deceased was guilty of contributory negligence, and no recovery can be had for his injury and death. 2 Thomp. Neg. 1656. See also Scott v. St. Louis, I. M. & S. R. Co. 79 Ark. 137, 116 Am. St. Rep. 67, 95 S. W. 490, 9 Ann. Cas. 212; Payne v. Chicago & N. W. R. Co. 108 Iowa, 188, 78 N. W. 813; Schneider v. Northern P. R. Co. 81 Minn. 383, 84 N. W. 124, 9 Am. Neg. Rep. 74; Olson v. Northern P. R. Co. 84 Minn. 258, 87 N. W. 843; West v. Northern P. R. Co. 13 N. D. 229, 100 N. W. 254; Chicago, R. I. & P. R. Co. v. Houston, 95 U. S. 697, 24 L. ed. 542; Schofield v. Chicago, M. & St. P. R. Co. 114 U. S. 615, 29 L. ed. 224, 5 Sup. Ct. Rep. 1125; Northern P. R. Co. v. Freeman, 174 U. S. 379, 43 L. ed. 1014, 19 Sup. Ct. Rep. 763; Shatto v. Erie R. Co. 59 C. C. A. 1, 121 Fed. 678, 13 Am. Neg. Rep. 698; Horn v. Baltimore & O. R. Co. 4 C. C. A. 346, 6 U. S. App. 381, 54 Fed. 301; Swanger v. Chicago, M. & St. P. R. Co. 132 Iowa, 32, 109 N. W. 308; Pyle v. Clark, 25 C. C. A. 190, 49 U. S. App. 260, 79 Fed. 744, 2 Am. Neg. Rep. 100; Chicago, R. I. & P. R. Co. v. Pounds, 27 C. C. A. 112, 49 U. S. App. 476, 82 Fed. 217; Zimmerman v. Hannibal & St. J. R. Co. 71 Mo. 489; MacLeod v. Graven, 19 C. C. A. 616, 43 U. S. App. 129, 73 Fed. 627, 7 Am. Neg. Cas. 396; Southern R. Co. v. Smith, 40 L.R.A. 746, 30 C. C. A. 58, 52 U. S. App. 708, 86 Fed. 292; Chicago, R. I. & P. R. Co. v. Still, 19 Ill. 508, 71 Am. Dec. 236; Hanover R. Co. v. Coyle, 55 Pa. 401; Terre Haute & I. R. Co. v. Clark, 73 Ind. 168; Pennsylvania R. Co. v. State, 61 Md. 108; Brown v. Milwaukee & St. P. R. Co. 22 Minn. 165; Hamblin v. New York & N. H. R. Co. 195 Mass. 555, 81 N. E. 258; Cincinnati, N. O.

& T. P. R. Co. v. Farra, 13 C. C. A. 602, 31 U. S. App. 306, 66 Fed. 500; Elliott v. Chicago, M. & St. P. R. Co. 150 U. S. 245, 37 L. ed. 1068, 14 Sup. Ct. Rep. 85; Haas v. Grand Rapids & I. R. Co. 47 Mich. 402, 11 N. W. 216; Lake Shore & M. S. R. Co. v. Miller, 25 Mich. 274; Pennsylvania R. Co. v. Beale, 73 Pa. 504, 13 Am. Rep. 753; Henze v. St. Louis, K. C. & N. R. Co. 71 Mo. 636; Fletcher v. Atlantic & P. R. Co. 64 Mo. 489; Gorton v. Erie R. Co. 45 N. Y. 660; Baltimore & O. R. Co. v. Hobbs, — Md. —, 19 Am. & Eng. R. Cas. 337; Lehigh & W. Coal Co. v. Lear, 6 Sadler (Pa.), 272, 9 Atl. 267; Allen v. Pennsylvania R. Co. 9 Sadler (Pa.), 382, 12 Atl. 493; Seefeld v. Chicago, M. & St. P. R. Co. 70 Wis. 216, 5 Am. St. Rep. 168, 35 N. W. 278; Rothe v. Milwaukee & St. P. R. Co. 21 Wis. 258; Sheffield v. Rochester & S. R. Co. 21 Barb. 339; Steves v. Oswego & S. R. Co. 18 N. Y. 422, 12 Am. Neg. Cas. 331; Butterfield v. Western R. Corp. 10 Allen, 533, 87 Am. Dec. 678; Reynolds v. Great Northern R. Co. 29 L.R.A. 695, 16 C. C. A. 435, 32 U. S. App. 577, 69 Fed. 808; Griffie v. St. Louis, I. M. & S. R. Co. 80 Ark. 186, 96 S. W. 750; Pittsburgh, C. C. & St. L. R. Co. v. Ferrell, 39 Ind. App. 515, 78 N. E. 988, 80 N. E. 425; Continental Improv. Co. v. Stead, 95 U. S. 161, 24 L. ed. 403; Texas & P. R. Co. v. Gentry, 163 U. S. 353, 41 L. ed. 186, 16 Sup. Ct. Rep. 1104; St. Louis & S. F. R. Co. v. Barker, 23 C. C. A. 475, 40 U. S. App. 739, 77 Fed. 810; McGrath v. New York C. & H. R. R. Co. 59 N. Y. 469, 17 Am. Rep. 359; Rodrian v. New York, N. H. & H. R. Co. 125 N. Y. 526, 26 N. E. 741; Strong v. Grand Trunk Western R. Co. 156 Mich. 66, 120 N. W. 682; Shufelt v. Flint & P. M. R. Co. 96 Mich. 327, 55 N. W. 1013.

SPALDING, Ch. J. (after stating the facts). The evidence, of which we have stated what we consider the material parts, may be resolved into a showing that there was no material physical obstruction to the view of the train for nearly a mile from any point in the highway between the north house and the track, a distance of over 277 feet; that although stormy, the storm was not severe enough to prevent anyone looking down the track to the east from seeing the train nearly or quite a mile; that the deceased's team was proceeding, during the distance mentioned, at a slow walk, and that he was observed by at least four witnesses part of the way from the house to the track, and at all

times when so observed had his fur coat collar turned over his ears, and was looking to the northwest.

One witness saw him from the time he passed the house until he reached the crossing, and stated that he seemed to be looking toward the northwest all the time. It is thus clear that he made no observation calculated to inform himself of the approach of the train from the east. Presumably his attention was attracted by the blowing off of steam of the train standing back and west of the depot. There were two tracks, so it was possible for a train to approach the station from each direction, east and west.

For the purposes of deciding this appeal it must be assumed that no signal was given from the approaching train. Whatever the personal views of the members of this court may be regarding the contributory negligence of the deceased, the rule on the subject has been firmly established in this state, and we do not feel justified in departing from it, especially in view of its being supported by the great weight of authority from other courts, although counsel for appellant cites a few very respectable authorities which might seem to justify a reversal.

We first proceed to consider the law with reference to the facts, and later shall briefly consider the assignments regarding the admission and rejection of evidence.

The driver of a team about to cross a railroad track at a public crossing in the country is charged with knowledge that such crossing is a dangerous place; that it cannot be assumed that cars are not approaching from either direction, or that there is no danger therefrom. He is bound to assume that cars are coming until satisfied by direct evidence to the contrary, and to that end he must vigilantly use his senses of sight and hearing in endeavoring to avoid injury, and to do all that ordinary care and prudence would dictate to avoid injury, having in view all the surrounding circumstances; and this whether or not any signal is given by an approaching train. Hope v. Great Northern R. Co. 19 N. D. 438, 122 N. W. 997, and authorities cited; West v. Northern P. R. Co. 13 N. D. 221, 100 N. W. 254, and authorities cited; Pendroy v. Great Northern R. Co. 17 N. D. 433, 117 N. W. 531; 23 Am. & Eng. Enc. Law, 765.

Where the exercise of the ordinary precautions of looking and listening, and making an intelligent use of one's faculties to inform him-

24 N. D.—4.

self as to the approach of a train, are neglected, and when the exercise of such precautions would have avoided the accident, negligence is conclusively established. It is apparent in the case at bar that Sherlock would have seen the train had he looked to the east or listened for it any time in the 277 feet between the north house and the crossing, and without much doubt he could have seen it had he looked toward the east at any time after crossing the Sheyenne river, 1,700 feet south of the railroad crossing. Had he looked and seen it, or listened and heard it, after passing the houses, the natural instinct of self-preservation would most certainly have caused him to avoid it. The evidence fails to show that he changed the speed of his team while passing that distance. In fact, it was, as has been stated, proceeding but very slowly and must have been under his control at all times.

If the failure to give a signal from the train was negligence on the part of the defendant, the negligence of the deceased contributed to the accident, and the case, therefore, comes under the rule that where an injury is due to the negligence of both parties no recovery can be had. West v. Northern P. R. Co. 13 N. D. 221, 100 N. W. 254.

The deceased was not excused by the weather from the exercise of ordinary care, even if it was sufficiently thick to render it difficult to observe the train or to hear its approach. The greater the danger the greater the care necessary for him to exercise, and the greater the caution necessary to constitute ordinary care. Pendroy v. Great Northern R. Co. 17 N. D. 433, 117 N. W. 531; West v. Northern P. R. Co. 13 N. D. 221, 100 N. W. 254; Hope v. Great Northern R. Co. 19 N. D. 438, 122 N. W. 997.

It it argued that the law of self-preservation must be taken into consideration by this court as an element of great importance, and that the presumption is that the deceased would, in the observance of that law, have stopped had it been possible for him to see the train, and that therefore he did not knowingly and recklessly attempt to cross the track. This law is entitled to great weight in a proper case, and usually may be considered in instances where doubt exists as to one's ability to see the train or hear it, but no such doubt is disclosed by the record in this case. See supplemental opinion in Kunkel v. Minneapolis, St. P. & S. Ste. M. R. Co. 18 N. D. 382, 121 N. W. 830. And the law of self-preservation, as above observed, would have worked in the deceased's favor,

and could not well have done otherwise, had he used his senses as he might and should have done. Where all the evidence shows that the deceased was not in the exercise of ordinary care, no inference arising from the instinct of self-preservation is applicable in his favor. Gahagan v. Boston & M. R. Co. 70 N. H. 441; 55 L.R.A. 426, 50 Atl. 146; Baker v. Chicago, R. I. & P. R. Co. 95 Iowa, 163, 63 N. W. 667.

It is also urged that because deceased's attention appeared to have been diverted by the train standing opposite and west of the depot, the circumstances are rendered exceptional, and that therefore the general rule relating to contributory negligence is not applicable, and that the case, therefore, became one for the jury. Numerous authorities may be found holding that extraordinary conditions and circumstances take cases out of the general rule. See Davy v. Great Northern R. Co. 21 N. D. 43, 128 N. W. 311. But we do not consider this case as coming within such an exception, the rule applicable being rather as laid down by many authorities that it is the plaintiff's duty to look in both directions for trains. It is obvious that this rule must be emphasized rather than relaxed where there are two tracks at the crossing, rendering it possible for trains to approach from each direction, or to pass each other; and the only diversion of attention, excusing the failure to look and listen, is where the attention is so irresistibly forced to something else as to deprive a traveler of the opportunity to look and listen. Guhl v. Whitcomb, 109 Wis. 69, 83 Am. St. Rep. 889, 85 N. W. 143. The facts in the above cited case are very similar to those of the case at bar. Hain v. Chicago, M. & St. P. R. Co. 135 Wis. 303, 116 N. W. 20; Smith v. Chicago, M. & St. P. R. Co. 137 Wis. 97, 118 N. W. 638; Clemons v. Chicago, St. P. M. & O. R. Co. 137 Wis. 387, 119 N. W. 102; Grimm v. Milwaukee Electric R. & Light Co. 138 Wis. 44, 119 N. W. 833; White v. Minneapolis, St. P. & S. Ste. M. R. Co. 147 Wis. 141, 133 N. W. 148.

That the deceased did not exercise the care with which he is charged in law, under the authority of the foregoing, and numerous other cases, is clear. The minds of reasonable men could not disagree on this. It is consequently apparent that, in the absence of reversible error on questions of evidence, the court did not err in directing a verdict for the defendant.

Regarding the errors assigned relating to the admission and rejection

of evidence, most of such assignments relate to questions concerning the probability or possibility of witnesses hearing the locomotive bell ring or its whistle blow just prior to the accident. As to these assignments. in view of our conclusion that it was the duty of the deceased to make use of his senses by looking and listening for the approach of trains, and regardless of whether signals were given or not, it is apparent that they were immaterial, and if their rejection was error at the time it occurred, it was error without prejudice.

Error is assigned on the overruling of an objection to the admission of the photographic exhibits in evidence, on the ground that there was no evidence that they were true pictures of the situation at the time of the accident. This court held in Higgs v. Minneapolis, St. P. & S. Ste. M. R. Co. 16 N. D. 446, 15 L.R.A.(N.S.) 1162, 114 N. W. 722, 15 Ann. Cas. 97, that, if properly verified, photographs may be received in evidence to show locations and conditions.

In the case at bar there can be no question of the photographs being correct representations of the place of the accident and its surroundings when taken in the following June. The only ground for the contention that they are inadmissible would seem to be that the accident occurred in December, when the ground was covered with snow, and that one building had been removed between the date of the accident and the date of the photographs. The evidence is clear and definite that, except in these two particulars, conditions were the same. We are unable to see how the snow on the ground and the absence of snow can constitute a material difference or have any material bearing on the issues. If it has it is in favor of the plaintiff, because with a foot of snow on the highway, and the wagon of the deceased elevated accordingly above the surface of the dirt road, and the train on the rails not correspondingly raised, the power of observation of the deceased would have been greater when the accident occurred than is shown by the photographs after the snow had disappeared. The removal of the building on the west side of the highway in no manner affected the accuracy of the photographs as to the location of the houses and the track to the east, and the ability of the deceased to perceive a train coming from the east from any point between the houses and the crossing. We are not unmindful of the fact that great care should be exercised in receiving photographic exhibits showing elevations. Much of the power to judge of distances from the

pictures depends upon the kind of camera used, its focus, and its elevation; but the photographic exhibits in this case are of such a nature that they do not, we think, misrepresent the situation in the respects for which they were offered in evidence. Other assignments are without merit. The judgment is affirmed.

BURKE, J., being disqualified did not participate.