R. B. WILLIAMS, Respondent, v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY, a Corporation, Appellant.

(221 N. W. 42.)

Opinion filed June 30, 1928. Rehearing denied October 1, 1928.

*Kelly & Morris* and *John E. Palmer,* for appellant.

*Bangs, Hamilton & Bangs,* and *Arthur L. Netcher,* for respondent.

NUESSLE, Ch. J. This action was brought to recover damages for personal injuries.

The facts, for the purposes of this appeal, may be stated as follows: The plaintiff was a farmer living north of the city of Fessenden. He had contracted with the school district to transport certain children to school. For this purpose he used an inclosed conveyance. On the morning of the 18th of January, 1924, he took the children to the schoolhouse and then drove to the business portion of Fessenden on some business of his own. The defendant is a common carrier whose line of railroad runs in an easterly and westerly direction through the city of Fessenden, crossing the streets at right angles. It operates numerous passenger and freight trains over this road. On the 18th of January one of its through freight trains, No. 89, running from east to west, was several hours late and approached the city at a speed of about 35 miles per hour. The day was cold and windy. Some snow

was blowing and at times it was not possible to see more than a few hundred feet. The plaintiff finished his business and started home at about eleven o'clock. It was necessary for him to cross the defendant's tracks. He drove north along the main street and as he crossed the main line track he was struck by No. 89 and severely injured. The crossing is on level ground and from it under normal conditions it is possible to see a long distance both east and west up and down the railroad track. There are three tracks at this point: the main line track on the north, the passing track, and then, on the south, the industry track. The distance from the center of the main line track to the center of the industry track is 48 feet. As the plaintiff approached this crossing on the day of the accident, one of the defendant's box cars was on the industry track on a line with the sidewalk on the east side of the street and obstructed the view so that it was not possible to look east along the track until after passing this car. Box cars were similarly placed on the west side of the street. The bus in which the plaintiff was driving was a horse-drawn vehicle with wheels. It was built of ceiling, was about 10 or 11 feet long, 4 feet wide and 5 feet high, and was wholly inclosed. There was a pane of glass in front and one, 9 x 11 inches, on each side near the front. The lines passed through small openings in the front of the bus. Plaintiff drove up the street at a slow trot. As he approached the crossing he slowed down and continued across at a walk. He testified that after he passed the industry track he looked east and saw no train and then looked west. Thereafter and before he saw the train he was struck by the engine of No. 89. When he looked east he could see to the east end of the depot, a little over 227 feet. He could not see further on account of the snow in the air. He heard no whistle or bell or any sound of warning.

Plaintiff brought this action to recover damages suffered by him through the collision. He alleged negligence on the part of the defendant in operating its train through the city of Fessenden at an excessive rate of speed; in failing to ring the bell or sound the whistle as it approached the crossing; and in placing its cars on the industry track near the crossing so as to obstruct the view of anyone who might approach the track at that point. The defendant in its answer denied any negligence in the respects charged and pleaded contributory negli-

gence on the part of the plaintiff. The case came to trial before a jury. Plaintiff had a verdict. Thereafter the proper foundation having been laid the defendant moved for judgment notwithstanding the verdict on the ground that the evidence was insufficient to sustain the same. This motion was denied, judgment was entered on the verdict and the defendant perfected the instant appeal from the order denying its motion.

The only questions raised on this appeal are as to the sufficiency of the evidence to sustain the verdict. Does the evidence warrant a finding that the defendant was negligent? Does it warrant a finding that the plaintiff was negligent? Ordinarily the question of negligence is a question of fact to be determined by the jury. It becomes a question of law only when reasonable men can draw but one conclusion from the evidence. Martin v. Parkins, 55 N. D. 339, 213 N. W. 574; Gallagher v. Great Northern R. Co. 55 N. D. 211, 212 N. W. 839; Pederson v. O'Rourke, 54 N. D. 428, 209 N. W. 798; Anderson v. Jamestown, 50 N. D. 531, 196 N. W. 753; McGregor v. Great Northern R. Co. 31 N. D. 471, 154 N. W. 261, Ann. Cas. 1917E, 141; Solberg v. Schlosser, 20 N. D. 307, 30 L.R.A.(N.S.) 1111, 127 N. W. 91; Pyke v. Jamestown, 15 N. D. 157, 107 N. W. 359.

The defendant is charged with negligence in three respects. If the jury's finding of negligence can be sustained as to any one of these then the verdict must stand, unless the defendant has sustained the burden it assumed by its plea of contributory negligence and has established such negligence on the part of the plaintiff. With a view to determining the issues thus made it becomes necessary to further examine the evidence. That determination must rest not on what we as individuals might find were we on the jury, but on whether it is possible to say that no reasonable man could draw the inferences from the evidence that this jury did in order to reach its verdict.

The plaintiff in his complaint predicated negligence on the alleged excessive rate of speed of the train which ran him down. The crossing where the accident occurred was on the main street of the little city of Fessenden. The day was cold and stormy. The air was filled with flying snow so that it was not possible to see more than a short distance. Under these conditions the defendant ran its train over the crossing at a speed of 35 miles per hour. While, of course, practical necessity

demands that railroads shall have the right of way over crossings and does not require that trains shall run at snail's pace in every village or city through which they pass, nevertheless they must be operated with regard to the rights of the public generally. Though necessity gives railroads the right of way over crossings, yet the public have in other respects equal rights there. Railroads cannot, because they have the right of way, disregard reasonable precautions for the safety of the public. They cannot say that the public shall cross their tracks at its peril. The same rule that requires the public to exercise greater care at dangerous crossings requires that railroads do likewise. So it seems to us that under all the circumstances as shown, the question as to whether the operation of the defendant's train on the day of the accident was negligent or otherwise was for the jury to answer. We hold then that on this account the finding of the jury that the defendant was negligent must be sustained. So holding it is not necessary to determine whether the defendant was negligent in the other respects charged.

There remains then the question as to whether the plaintiff himself was guilty of negligence in approaching the crossing and in attempting to pass over the same in the manner and under the circumstances disclosed. Of course a railroad crossing is a dangerous place. The fact that it is a crossing of itself is notice to every reasonably prudent individual of the danger incident to it. Some crossings are more dangerous than others and all crossings more dangerous at some times than at other times owing to variant conditions and circumstances. The rule is that the more dangerous a crossing is, if the fact of this danger be known to the user of the highway, the greater the care he must exercise in passing over it. Sherlock v. Minneapolis, St. P. & S. Ste. M. R. Co. 24 N. D. 40, 138 N. W. 976. "The law requires of one going upon or over a railroad crossing the exercise of such care for his own protection as a reasonably prudent person ordinarily would take in the same or like circumstances, including the use of his faculties of sight and hearing." Flannelly v. Delaware & H. Co. 225 U. S. 597, 56 L. Ed. 1221, 44 L.R.A.(N.S.) 154, 32 Sup. Ct. Rep. 783. In the instant case the plaintiff was well acquainted with the crossing and had passed over it many times. He knew that numerous trains, running both east and west, passed over it. He did not know that

train No. 89 was late on that particular morning, but he did know that this train and other trains on the defendant's road frequently were late and that he was likely to meet a train at the crossing at any time during the morning hours. He knew that the regular morning passenger train from the east was due about the time he attempted to pass over the crossing. He testified that he exercised greater care because he thought that this train was about due. As he approached the crossing the rattle of the wheels made it somewhat more difficult to hear and he heard no sound warning him of danger. He slowed his team to a walk because there might be trains approaching. So far as it appears his team was under control. He says that he looked east shortly before the accident and could see to the east end of the depot, about 227 feet east of the crossing. Except as his vision was obscured by the flying snow, the view was clear for a long distance up the track. He had an opportunity to look at any and all times while he was passing from the industry track to the main line track, a distance of over 40 feet. How fast he was traveling is largely a matter of conjecture since the only evidence as to that is that his team was walking. Of course, under these circumstances, it is not possible to demonstrate by mathematical calculation whether the plaintiff was negligent or not negligent. But sometimes arithmetic is an aid in passing upon questions of negligence. So here if the plaintiff were traveling at the rate of 3 miles per hour, then he required a little less than 10 seconds to pass from the industry track to the main line track. If at the rate of 4 miles per hour, then he required a little more than 7 seconds to cover the distance between the tracks. If at 5 miles per hour, and his team would hardly walk so fast, he required a little less than 6 seconds. In any event, with his vision obscured as he says it was, the train was not visible when he crossed the first track. And whether he traveled at the rate of 3, 4 or 5 miles per hour, anything that he did had to be done within the space of a few seconds. Now though the plaintiff believed that a train might be approaching from the east, nevertheless he could not exercise due care without also looking to the west. Besides, it was necessary that he give some attention to the driving of his team. It is true that if he had first looked to the west and then to the east, probably the accident would not have happened. But it seems to us that it was not necessarily negligence for him to look in

the manner in which he did look. The train that he thought might be coming from the east was one which stopped at the depot to the east of him, and trains frequently passed from west to east as well as from east to west. Besides, between the industry track and the main line track, he had to cross the passing track and was under the necessity of guarding against a collision there. Where time is measured in seconds it is difficult to say what an ordinarily prudent person would do. And under such circumstances as disclosed here, it seems to us the question is one to be passed upon by a jury. See Wallenburg v. Missouri P. R. Co. 86 Neb. 642, 37 L.R.A.(N.S.) 135, 126 N. W. 289, and cases cited in note. The defendant argues that, in any event, the plaintiff could have avoided the accident by stopping in order to look. But we are not inclined to agree with this contention. It is true that if the plaintiff's vision were only momentarily obscured by the flying snow that this might be so, but whether or not it was so obscured was a question for the jury. We are not unmindful of the late case of Baltimore & O. R. Co. v. Goodman, 275 U. S. 66, 72 L. ed. 22, 56 A.L.R. 645, 48 Sup. Ct. Rep. 24, 27 N. C. C. A. 1. The rule there announced cannot help the defendant here. In the instant case the plaintiff could see as well and as far when moving as he could when not moving. If he had stopped to look the train might have been upon him when crossing, though when he looked and started again it was not in sight. Ordinary prudence did not require him to stop and wait until the weather cleared before crossing the track. He had the right to assume that the defendant as well as he would use care commensurate with the danger incident to the circumstances. So it seems to us that it is not possible to say that no man, considering all the evidence in this case, could reasonably believe that the plaintiff did not use due care. And since we are not exercising the functions of a jury, but instead are determining whether we should say as a matter of law that due care was not exercised, the evidence must be considered as sufficient to sustain the verdict. Nor is this holding inconsistent with the cases of Sherlock v. Minneapolis, St. P. & S. Ste. M. R. Co. 24 N. D. 40, 138 N. W. 976, and Rattie v. Minneapolis, St. P. & S. Ste. M. R. Co. 55 N. D. 686, 215 N. W. 158, cited and relied upon by the defendant. Of course the plaintiff could not close his eyes and say he did not see, or stop his ears and say he did not

hear. He says he both looked and listened. Whether he did, and whether, doing so, he ought to have seen and heard, were questions for the jury.

The judgment appealed from must be affirmed.

BIRDZELL, CHRISTIANSON, BURKE, and BURR, JJ., concur.